W. A. RAMSEY v. J. A. CHEEK.

*Slander—Libel—Malice—Evidence—Burden of Proof—Privileged Communication.*

1. In libel and slander, when the words are actionable *per se* the law presumes malice, and the burden is on the defendant to show that the charge is true, unless the alleged libellous matter is privileged, then the rule is otherwise.

2. Privileged communications are of two kinds: (1.) Absolute privilege—where the alleged defamatory words are uttered in the course of the performance of public service, in which case, notwithstanding proof of the falsehood of the charge and actual malice, an action cannot be maintained thereon. (2.) Qualified privilege—where the alleged libellous language is spoken by one under no legal obligation to act, about a matter affecting the public good; in such case there is a presumption of law that the words were spoken *bona fide*, and the burden is on the plaintiff to show the falsity of the charge, and that it was made with express malice.

3. In cases of qualified privileged communications, evidence that the charge was false will not of itself be sufficient to establish the malice, unless there is proof that the defendant knew that it was false (*Wakefield* v. *Smithwick*, 49 N. C. [4 Jones], 327, is disapproved in this respect); or that there were opportunities available to him whereby he might have ascertained the truth, but which he neglected.

4. Express malice is malice in fact, as distinguished from implied malice, which is raised by law from the use of words actionable *per se*.

5. The malice may be proved by extrinsic evidence, *e. g.*, ill-feeling, threats, etc., or by the words of the defamatory charge itself, and the circumstances accompanying its publication.

6. Where the defendant, in a letter to the Superintendent of the Census, charged the plaintiff, who had been appointed an enumerator, with the murder of two Union soldiers, and also that he had, with others, defrauded defendant out of his election to a State office (and there was evidence tending to show that these charges were not true), and complaining that plaintiff had been appointed to an office against defendant's recommendation, it was error in the Court to withdraw the case from the jury and nonsuit the plain-

tiff, upon the ground there was no evidence of the requisite malice.

7. Whether the communication is privileged, is a question of law (subject to review on appeal), unless the facts are disputed, in which case, it is a mixed question of law and fact.

CIVIL ACTION, tried before *Boykin, J.,* at March Term, 1891, of DURHAM Superior Court.

The alleged libel was contained in a letter written by defendant to the Superintendent of the Census, as follows:

"HILLSBORO, N. C., June 10th, 1890.

HON. ROBERT PORTER, Washington, D. C.:

DEAR SIR—In this district Mr. Hawkins appointed a large majority of enumerators, extreme Democrats, ballot-box stuffers, among them MURDERERS and drunkards.   I having represented the county and Durham in the State Legislature, having been the Republican candidate for the State Senate last election, thought that I was entitled to recommend and get a part of my Republican friends appointed enumerators, but instead of this, Hawkins pays no attention to me and friends but appoints in Durham a man named Ramsey who murdered, since the war over two *Union soldiers* while they were *asleep.*   This same man was the leader in defrauding me and Mr. Nichols out of our election last election.  Another of his appointees in Durham, Mr. Bratcher, helped to carry Mr. Jordan to the woods to hang him one day after election, but was prevented by E. J. Parish and others   You remember seeing Mr. Jordan's published account in all leading Republican journals?   Mr. Jordan stood high as a church man and citizen; at this place, he ap'ted one Tinnen, who is extreme partizan and was discharged during *Cleveland's* administration for *drunkness.*   The above characters is a sample of the kind of men Hawkins appointed.   We do not know, or can we understand, such work coming from a

Republican. Some good men say he has boodled out the places to Democrats to injure the Republican cause in the future, who ever has control or recommends the appointments in North Carolina, does not care for the interest of the Republican party in this section.

For reference will refer you to Hon. John Nichols, or Brower, or Collector E. A. White, Col. A. W. Shaffer, of Raleigh, N. C. My sole object in notifying you about the above is to do my duty to the party in which I belong, *Republican.*          Respectfully,

JAMES A. CHEEK."

The plaintiff introduced testimony tending to show that the charges against him in the letter were untrue; that he was a man of good character, and that the defendant had no official connection with the public service, and, thereon, rested his case.

The defendant offered no testimony, but contended that upon the evidence the plaintiff could not recover; that the alleged libelous letter was a privileged communication, and the burden was on the plaintiff to show (express) malice, and he had failed to do so. The plaintiff contended the letter was not privileged to the extent claimed by the defendant; that he had offered no evidence to show that he wrote the letter for an honest *bona fide* purpose, and that the letter itself contained evidence to go to the jury of express malice, and particularly, in expressing malice towards the plaintiff in that the writer in it made the assertion that the plaintiff was the same man who "was the leader in defrauding" the defendant out of his election as the Republican candidate for the Senate at the election in 1888; that the letter on its face bears evidence of express malice towards the plaintiff to go to the jury, and was written with the intent to punish the plaintiff for what the defendant Cheek conceived to be a personal wrong done to him by the plaintiff.

The Court held that the alleged libelous letter was a privileged communication as matter of law, that there was no evidence to go to the jury to show express malice, and the plaintiff could not recover.

Upon this announcement of decision and intimation of opinion by the Court, the plaintiff excepted to the rulings of the Court, and submitted to a nonsuit, and appealed.

*Messrs. W. A. Guthrie* and *J. S. Manning,* for plaintiff.
*Messrs. J. Parker* and *J. W. Graham,* for defendants.

CLARK, J.: The words used charged the plaintiff with an indictable offence, and also were calculated to disparage him in his office. They were actionable *per se.* The defendant introduced no evidence, neither to prove the truth of the allegations nor to show that he had written the letter for an honest *bona fide* purpose, but contended that the letter was a privileged communication, and that the burden was on the plaintiff to show express malice, which he had failed to do. The Court being of opinion with the defendant, the plaintiff took a *nonsuit* and appealed. In libel and slander, if the words are actionable *per se,* the law presumes malice, and the burden is on the defendant to show that the charge is true, unless the communication is privileged. Then the rule is otherwise.

Privileged communications are of two kinds—

1. *Absolutely Privileged*—Which are restricted to cases in which it is so much to the public interest that the defendant should speak out his mind fully and freely, that all actions in respect to the words used are absolutely forbidden, even though it be alleged that they were used falsely, knowingly, and with express malice. This complete immunity obtains only where the public service or the due administration of justice requires it, *e. g.,* words used in debate in Congress and the State Legislatures, reports of military or other officers to

109—18

their superiors in the line of their duty, everything said by
a Judge on the bench, by a witness in the box, and the like.
In these cases the action is absolutely barred. 13 Am. &
Eng. Enc., 406.

2. *Qualified Privilege*—In less important matters where
the public interest does not require such absolute immunity,
the plaintiff will recover in spite of the privilege, if he can
prove that the words were not used *bona fide*, but that the
defendant used the privileged occasion artfully and know-
ingly to falsely defame the plaintiff. Odgers on Libel and
Slander, 184. In this class of cases, an action will lie only
where the party is guilty of falsehood and express malice.
13 Am. & Eng. Enc., *supra*. Express malice is malice in
fact, as distinguished from implied malice, which is raised
as a matter of law by the use of words libellous *per se*, when
the occasion is not privileged. Whether the occasion is
privileged is a question of law for the Court, subject to
review, and not for the jury, unless the circumstances of the
publication are in dispute, when it is a mixed question of
law and fact.

The present case is one of qualified privilege. The plain-
tiff was not in government employ under Porter. He was not
called upon by any moral or legal obligation to make the
report, and it was not made in the line of official duty. It
was not absolutely privileged. But he was an American
citizen interested in the proper and efficient administration
of the public service. He had, therefore, the right to criti-
cise public officers, and if he honestly and *bona fide* believed,
and had probable cause to believe, that the character and
conduct of plaintiff were such that the public interest
demanded his removal, he had a right to make the commu-
nication in question, giving his reasons therefor, to the head
of the department. The presumption of law is that he acted
*bona fide*, and the burden was on the plaintiff to show that
he wrote the letter with malice or without probable cause.

*Briggs* v. *Garrett,* 111 Penn., 404; *Rodwell* v. *Osgood,* 3 Pick., 379; S. C. 15, A. M. Dec., 228. Malice in this connection is defined as "any indirect and wicked motive which induces the defendant to defame the plaintiff. If malice be proved, the privilege attaching to the occasion is lost at once." Odgers, *supra,* 267; *Clark* v. *Molyneux,* 3 Q. B. D., 246; *Bromage* v. *Prosser,* 4 B. & C., 2; *Hooper* v. *Truscott,* 2 Bingham N. C., 457; *Dickson* v. *Earl of Wilton,* 1 F. & F., 419. The rules applicable to an ordinary action for libel apply in such cases whenever malice is proved. Proof that the words are false is not sufficient evidence of malice unless there is evidence that the defendant knew, at the time of using them, that they were false. *Fountain* v. *Boodle,* 43 E. C. L., 605; Odgers, *supra,* 275. That the defendant was mistaken in the charges made by him on such confidential or privileged occasion, is, taken alone, no evidence of malice. *Kent* v. *Bongartz,* 2 Am. St. Reports, 870, and cases cited. .

We do not assent to the opposite doctrine which would seem to be laid down by PEARSON, J., in *Wakefield* v. *Smithwick,* 49 N. C., 327, which is not supported by the authority he cites, and, doubtless, intended to follow, for if the words are true a defendant does not need the protection of privilege. It is when they are false that he claims it. To strip him of such protection there must be falsehood and malice. To hold that falsehood is itself proof of malice in such cases reduces the protection to depend on a presumption of the truth of the charges. If, however, there are means at hand for ascertaining the truth of the matter, of which the defendant neglects to avail himself, and chooses rather to remain in ignorance when he might have obtained full information, there will be no pretense for any claim of privilege. Odgers, *supra,* 199. "To entitle matter otherwise libellous to the protection (of qualified privilege) which attaches to communications made in the fulfillment of duty, *bona fides,* or to use our own equivalent, honesty of purpose is essential;

and to this, again, two things are necessary : (1), that it be made not merely on an occasion which would justify making it, but also from a sense of duty ; (2), that it be made with a belief of its truth " COCKBURN, C. J., in *Dawkins* v. *Lord Paulet*, L. R., 5 Q. B., at page 102. The malice may be proved by some *extrinsic* evidence, such as ill-feeling or personal hostility or threats and the like on the part of the defendant towards the plaintiff. But the plaintiff is not bound to prove malice by extrinsic evidence. He may rely on the words of the libel itself, and on the circumstances attending its publication as affording evidence of malice. Odgers, *supra*, 277–288 ; 13 Am. & Eng. Enc., 431.

In the present case the letter charged the defendant with murder and with having cheated the plaintiff out of his election. There was evidence tending to prove that these charges were untrue, and that the character of plaintiff was good. There was no evidence in reply, and the answer admits that the object of the communication was to secure the removal of plaintiff from the office he held. There was evidence on the face of the letter tending to show that the motive of the defendant was ill-will to the plaintiff, by reason of his alleged action in defrauding defendant of 'his election, and spleen on account of his (the defendant) not having had his recommendation more considered, and his friends appointed to the offices to which Ramsey and others named in the letter had been appointed. There being evidence tending to prove malice, as above defined (which need not be personal ill-will to the plaintiff), his Honor erred in not submitting the case to the jury.

If the defendant made the communication not recklessly or maliciously, but *bona fide* and out of a desire to benefit the public service, the plaintiff cannot recover, though the charges made by the defendant may be untrue. That the plaintiff was of a different political party from himself, gave him, however, no license to make to the appointing power

false and defamatory charges against him, maliciously or without probable cause, simply to secure his removal from office. If the defendant thought the plaintiff should be removed from office because belonging to a different political party, and, therefore, in his judgment, unsuitable or unfit to hold the office, he should have put his letter on that ground and there could have been no complaint. He had no right to make defamatory charges, if false, to secure defendant's removal, the motive not being a *bona fide* one to purge the public service of a felon and ballot-box stuffer, but merely to remove one who was objectionable to him either as being of an opposite party or by having injured him personally, or from having been appointed instead of his own recommendee for the place. If the defendant's motive was to injure Hawkins, and to do that he recklessly made false and defamatory allegations against the plaintiff, that is malice which would entitle the plaintiff to damages.

It is to the public interest that the unfitness or derelictions of public officials should be reported to the authority having the power of removal, and any citizen *bona fide* making such report does no more than his duty, and is protected by public policy against the recovery of damages, even though the charge should prove to be false. But public justice will not permit the government archives to be made, with impunity, the receptacle of false and defamatory charges, put forward to secure the removal of an officer, whereby the malice of the party making such charge may be gratified, or that some benefit or advantage, direct or indirect, may come to him· *Proctor* v. *Webster*, 162 B., 112, (1885). If the party knows the charge to be false, or makes it without probable cause, this is evidence of malice. *Wakefield* v. *Smithwick*, 49 N. C., 327.

If the charge in such cases is false, the law looks to the motive. If the defendant, not moved by the public welfare, but by some wicked and indirect motive, such as to gratify

his malice or his love of patronage, to assert his own influence or the like by false charges, has wilfully or recklessly defamed the plaintiff, the latter is entitled to recover damages at the hands of the jury.

Error.