EUGENE M. JONES v. WAVERLY M. HESTER.

(Filed 9 October 1963.)

1. Evidence § 15—

Evidence of a circumstance surrounding the parties which is necessary to understand properly their conduct and motives, or to weigh the reasonableness of their contentions, is competent, and it is not required that it bear directly on the question in issue.

2. Libel and Slander § 13—

In an action by a manager of a store against the president and director of the corporation for libel in calling a stockholders' meeting to present evidence of the alleged dishonesty of plaintiff and a former co-manager of the corporation, it is competent to show upon the question of defendant's want of good faith that defendant, between the time of the call and the meeting, acquired the beneficial ownership of the co-manager's stock at one-third of its par value and released such co-manager from further responsibility.

3. Libel and Slander § 8—

The act of the president or manager of a corporation in making inquiry and bringing to the attention of the stockholders evidence of dishonesty of any employee, past or present, is qualifiedly privileged, and he is protected from liability for charges of dishonesty made by him in such instances when they are made in good faith, but the person defamed may defeat the defense of qualified privilege by alleging and proving malice, or that the publication was prompted by some improper or ulterior motive and was not made in good faith.

APPEAL by plaintiff from Latham, S.J., February 4, 1963, Regular Civil Term POLK Superior Court.

The plaintiff instituted this civil action to recover actual and punitive damages arising upon a cause of action stated by him as follows:

"V. In 1959 and in 1960, until February, when plaintiff's employment by Ballenger's, Incorporated, was terminated, plaintiff was manager of the store operated by said Ballenger's, Incorporated, in Tryon, North Carolina, and continued to have and to enjoy the good reputation hereinabove set forth in paragraph III hereof.

"VI. On April 15, 1960, the defendant Waverly M. Hester, acting as an individual and not in his capacity as an officer or director of said Ballenger's, Incorporated, and *ultra vires* his powers, authority and duties as such, wrote, published and circulated of and concerning plaintiff as a businessman the following false, defamatory and libelous words:

" 'Subject to call and waiver of notice, there will be a stockholders meeting of Ballenger's, Incorporated, Tryon, N. C. in the office of W. M. Hester, President, on Tuesday afternoon at 3:00, April 19, 1960. The purpose of this meeting will be to present evidence of dishonesty on the part of some former employees at Ballenger's, Inc., and to call a $5,000.00 Surety Bond on Matt O'Shields and Eugene Jones.'

"VII. Defendant by said words 'some former employees' intended to and did refer to plaintiff and intended all who read said words to so understand them and the defendant further intended to and did charge the plaintiff with dishonesty, such charge being made by the defendant maliciously, wantonly and knowingly without justification, warrant or excuse.

"VIII. Defendant knew, at the time he circulated the written publication quoted in paragraph VI hereof, that the said charge of dishonesty made against plaintiff was untrue and without foundation."

The defendant, in addition to a general denial, entered the following further answer and defense:

". . . that the publication complained of in paragraph 6 of the complaint was sent by the defendant to the other stockholders of the company and to no one else; that the defendant, as an officer and stockholder of Ballenger's, Inc., and as Attorney in Fact for B. L. Ballenger, had an interest in the honesty and integrity of the employees of Ballenger's, Inc., both those who were then employed and those who had been formerly employed; and, as President of the Company, it was his duty to check on the honesty and integrity of the employees of the Company; that

the other stockholders of the Company were also interested in the honesty and integrity of the employees of the Company, both those employees employed by the Company on April 15, 1960, and those employees formerly employed by the Company; that in sending the publication complained of, defendant was acting as President and stockholder of the corporation and Attorney in Fact for B. L. Ballenger, in the discharge of his duties in these capacities; . . . that said publication was made in the honest belief on the part of the defendant that the matters set forth therein were true; that, therefore, said publication is a privileged publication, and the defendant pleads the fact that it is a privileged publication in bar of plaintiff's right to recover; that the defendant in sending said publication was not activated by any ill will, malice or ill feeling toward the plaintiff, and did not at any time, and has not at any time, held any ill will, malice or ill feeling toward the plaintiff."

By reply, the plaintiff alleged the defendant, in making the charges of plaintiff's dishonesty, was not acting in good faith for that before making the charges he had completed a check of plaintiff's activities as manager of Ballenger's and had caused the bonding company to make an investigation which had been completed without disclosing any misconduct on the part of the plaintiff; that the defendant's act and conduct "were a deliberate, intentional and malicious attempt to harrass, oppress and injure the plaintiff. . . ."

The plaintiff offered in evidence a letter which the defendant wrote him on the day of, or perhaps after, the stockholders meeting on April 19. The following is a part of that letter:

"P. S. The state manager of St. Paul Fire, Marine and Insurance Co. has spent one hour with me today and their bond adjustor, Mr. William D. Bittle, 215 New Medical Building, Asheville, N. C., telephone number Alpine 3-6537, will be glad to confer with you and your attorney at any time convenient to you both regarding a settlement of the bond held by Ballenger's, Inc., guaranteeing your honesty and integrity."

The plaintiff also offered in evidence the adverse examination of the defendant consisting of 64 pages of questions and answers, much of which the court excluded. In some instances the excluded answers appear and in others the defendant did not answer, or at least the answer is not recorded. At any event, the excluded answers were kept from the jury. The admissions tended to show that at the time the defendant transmitted the alleged libelous notice, the plaintiff and

O'Shields each owned capital stock in Ballenger's, Inc., of $15,000.00 par value. Both were under bond for the faithful discharge of their duties as co-managers. In the adverse examination the defendant was asked if the meeting was called with respect to O'Shields. If required to answer, the defendant would have said, "No, it was not called with respect to Mr. O'Shields. That was taken care of." Defendant was then asked whether he did not negotiate the purchase of the O'Shields stock in Ballenger's for $5,000.00 and cause it to be transferred to the Mountain Land Improvement Company in which he was interested. If required to answer, the defendant would have said, "That is the record that speaks for itself." The defendant negotiated the purchase of the O'Shields stock between the date of the call and the date of the stockholders meeting.

At the conclusion of the plaintiff's evidence, the court entered judgment of involuntary nonsuit from which the plaintiff appealed.

*Robert N. Golding, W. Y. Wilkins, Jr., for plaintiff appellant.*

*McCown, Lavender & McFarland, by Wm. A. McFarland, and Hamrick & Jones, by Fred D. Hamrick, Jr., for defendant appellee.*

HIGGINS, J.   The plaintiff relied on the defendant's adverse examination to fill in the low places in his case. We have quoted in part and summarized in part admissions taken from the adverse examination, most of which were excluded by the court. However, the admissions in the pleadings, the evidence introduced, and that which was offered and excluded tended to show the following: Prior to February, 1958, the plaintiff and Matt O'Shields were comanagers of Ballenger's, Inc. Each owned $15,000 stock in the corporation. O'Shields was released as comanager in 1958. The plaintiff acted as sole manager thereafter. The defendant was president of the corporation.

On April 15, 1960, the defendant issued a call for a stockholders meeting "to present evidence of dishonesty on the part of some former employees of Ballenger's, Inc., and to call a $5,000 surety bond on Matt O'Shields and Eugene Jones." On the adverse examination the defendant was asked whether between April 15, 1960, the date of the notice calling the meeting, and April 19, 1960, the date of the meeting, he did not (on behalf of Mountain Land Company in which he was interested) purchase the Matt O'Shields stock for $5,000 with the understanding "it was to be a closed transaction and there would be no further demands on Matt O'Shields . . ." Answer: "That is the record that speaks for itself."

O'Shields and Jones were comanagers. Both were covered by a faithful performance bond. The conduct of both was to be investigated in the stockholders meeting. The defendant purchased the O'Shields stock for one-third of its par value between the call and the meeting and O'Shields was released from further responsibility. On the day of the stockholders meeting the defendant wrote the plaintiff that he, the defendant, had conferred with the manager and adjustor of the surety company, who, in turn, would confer with plaintiff and his attorney "regarding a settlement of the bond held by Ballenger's, Inc., guaranteeing your honesty and integrity." This evidence which appears to have been excluded may or may not be sufficient to permit the inference the president of Ballenger's, Inc., meant to charge O'Shields and plaintiff with dishonesty and a breach of their bond in order to influence them to sell their Ballenger's stock (not to the Ballenger corporation — but to another company in which the defendant was interested) for one-third of its par value.

In view of the tie-in between O'Shields and the plaintiff, the latter was entitled to place before the jury the defendant's admission that he arranged the purchase of the O'Shields stock and released O'Shields from further responsibility to Ballenger's. The rule governing the admissibility of such evidence was stated by Stacy, C.J., in *Farmers Federation v. Morris,* 223 N.C. 467, 27 S.E. 2d 80: " 'It is not required that the evidence bear directly on the question in issue, and it is competent and relevant if it is one of the circumstances surrounding the parties, and necessary to be known to properly understand their conduct or motives, or to weigh the reasonableness of their contentions.' " Citing *Bank v. Stack,* 179 N.C. 514, 103 S.E. 6.

"An extrajudicial act or declaration may be admitted into evidence where it tends to explain or show the character, motive, purpose or intent of the act or transaction in dispute." *People v. Frangadakis,* 7 Cal. Rpts. 776.

The defendant's admissions with respect to the O'Shields transaction may or may not aid the jury in determining whether in making the charge of dishonesty at the stockholders meeting, the defendant acted in good faith. The question is one of fact to be determined by the jury and not one of law to be decided by the court.

The president of a business corporation is charged with the duty of safeguarding the legitimate business interests of his company. Of course, it is his duty to make inquiry and to bring to the attention of the stockholders any evidence of dishonesty on the part of any employee, past or present — not excluding stockholders. A call of a stockholders meeting to present evidence of dishonesty places the

president in a position of qualified privilege, both in calling the meeting and in presenting the evidence. His position and the occasion were sufficient to protect him from liability if his charges were made in good faith. *Hartsfield v. Hines*, 200 N.C. 356, 157 S.E. 16.

If a publication is libelous or actionable *per se* the author may escape civil liability by pleading and showing privilege, either absolute or qualified. *Ponder v. Cobb*, 257 N.C. 281, 126 S.E. 2d 67. In order to defeat the defense of qualified privilege, the plaintiff may plead and prove malice, or that the publication was prompted by some improper or ulterior motive and not made in good faith. *Harrison v. Garrett*, 132 N.C. 172, 43 S.E. 594; *Gattis v. Kilgo*, 140 N.C. 106, 52 S.E. 249; *Riley v. Stone*, 174 N.C. 588, 94 S.E. 434; *Yancey v. Gillespie*, 242 N.C. 227, 87 S.E. 2d 210; *Chambers v. Leiser*, 43 Wash. 285, 86 P. 627.

The evidence admitted, together with that which was offered and improperly excluded, raised issues of fact which the court was not permitted to decide as a matter of law. Decision must be made in the manner provided for the settlement of disputed issues of fact — by submission to the jury.

The judgment of involuntary nonsuit entered in the court below is Reversed.