R. H. BOULIGNY, INC., A CORPORATION, V. UNITED STEELWORKERS OF AMERICA, AFL-CIO, AN UNINCORPORATED ASSOCIATION.

(Filed 3 May, 1967.)

**1. Appeal and Error § 47—**

Upon appeal from an order allowing a motion to strike, the facts alleged, as distinguished from the conclusions of law, must be taken as true, and the question determined on the basis of whether the allegations are germane.

**2. Associations § 5;   Master and Servant § 15—**

An unincorporated labor union may be sued in the courts of this State as a legal entity separate and apart from its members, G.S. 1-69.1, G.S. 1-97(6), and may be held liable in damages for torts committed by its employees or agents while acting in the course of their employment.

**3. Libel and Slander § 1—**

A corporation may maintain an action for libel or slander for words which injure it in its credit, in its business good will, or in its relations with its employees.

**4. Same—**

While a corporation may not maintain an action for libel or slander of its officers, where the published statements complained of charge that the corporation's representative did certain things, but, in context, it is clear that the accusation was that the things were done by the representative in the execution of corporate policy, the libel relates to the corporation itself.

**5. Same—**

Written statements that a corporation did certain acts which would have the natural and immediate tendency to cause actual damage to the relationship between the corporation and its employees are actionable *per se*.

**6. Libel and Slander § 16—**

A libel or slander which is actionable *per se* ordinarily entitles plaintiff to recover nominal damages at least, but plaintiff may recover compensatory damage only upon proof of both the fact and the extent of damages actually suffered by it as a result of the publication, and may recover punitive damages only upon proof that the publication was made with actual malice, and, even so, the amount awarded as punitive damages rests in the discretion of the jury, subject to the limitation that the amount may not be excessively disproportionate to the circumstances.

**7. Libel and Slander § 9—**

The public interest in the free expression and communication of ideas in legislative bodies and in judicial proceedings, etc., requires that words spoken or published by the participants in such circumstances be absolutely privileged, and no action for libel or slander will lie even though the statements be false and malicious, but the privilege attaches to the circumstances under which the words are used and not to the persons themselves.

BOULIGNY, INC., *v.* STEELWORKERS.

**8. Libel and Slander § 8—**

Qualified privilege extends to all communications made *bona fide* upon any subject matter in which the party uttering the statement has an interest or in reference to which he has some moral or legal duty to perform, in which case recovery for false and defamatory words may be had only upon proof of actual malice.

**9. Same; Master and Servant § 15—**

Statements spoken or published in good faith by a labor union in the course of a campaign to solicit members or to establish itself as an authorized representative of the employees of a business enterprise are qualifiedly privileged provided there is a reasonable relation between such objectives and the statements made, and such privilege extends to communications between the union and prospective members as well as between the union and its members.

**10. Same—**

Qualified privilege is no defense to an action for libel or slander if the false statements were made with actual malice.

**11. Same—**

Mere vituperation and name calling by a labor union in its activities to solicit members or obtain the right to represent the employees of a business cannot be made the basis of an action for libel or slander by the employer.

**12. Same—**

Plaintiff alleged that defendant labor union published false statements concerning plaintiff's treatment of an employee or former employee, which statements were made for the purpose of creating, and had the natural tendency to create, distrust and disloyalty between plaintiff and its employees. *Held:* The burden rests upon plaintiff to prove actual malice in the publication of the defamatory statements, but if the jury finds actual malice by the greater weight of the evidence, the fact that such statements were qualifiedly privileged, is no defense.

**13. Libel and Slander § 12—**

Privilege is an affirmative defense which must be alleged in the answer.

**14. Constitutional Law § 1—**

An act of Congress pursuant to the Constitution of the United States is the supreme law of the land, and in case of a conflict between such act and the laws of this State, the act of Congress and the decisions of the U. S. Supreme Court construing such act, control.

**15. Courts § 18; Master and Servant § 14—**

The National Labor Relations Act, 29 U.S.C. 141 etc., and the Norris-LaGuardia Act, 29 U.S.C. 101, do not deprive the State courts of jurisdiction of an action for libel by an employer against a labor union for statements published during the course of a campaign by the union to solicit members and become the representative of the employees for collective bargaining; nevertheless, in such instance a State court may not apply the doctrine of libel *per se* and may render judgment only if the plaintiff alleges and proves not only actual malice but some actual damage resulting from the libelous publications.

BOULIGNY, INC., *v.* STEELWORKERS.

**16. Libel and Slander § 1;    Constitutional Law § 18—**

   Even though the First Amendment to the Federal Constitution applies
   to state action by virtue of the Fourteenth Amendment, the constitutional
   guarantee of freedom of speech and of the press affords no protection
   against an action for libel or slander uttered with actual malice and re-
   sulting in actual damage.

**17. Pleadings § 34—**

   There is no prejudicial error in striking from a pleading allegations
   which merely repeat or restate that which has been expressly alleged or
   necessarily implied in other portions of the pleading not stricken. G.S.
   1-153.

**18. Same—**

   In an action by an employer against a labor union for libel, allegations
   of the answer to the effect that the statements were published in connec-
   tion with the union's efforts to organize plaintiff's employees are rele-
   vant to the question of the union's qualified privilege and, to the applica-
   tion of the modification of State law by the National Labor Relations
   Act, and were improperly stricken.

**19. Same—**

   There is no error in striking from a pleading matters which are not
   allegations of fact but mere conclusions.

**20. Libel and Slander § 1;    Master and Servant § 15—**

   In an action by an employer against a labor union for libel growing
   out of a publication by the union in its efforts to organize the employees
   for collective bargaining, proof that the labor union made false and
   malicious statements having a tendency to injure the employer's good
   name and reputation in the eyes of its employees or prospective employees
   would constitute proof of the element of actual damage sufficient to per-
   mit recovery of nominal damages under the National Labor Relations
   Act.

**21. Libel and Slander § 16;    Master and Servant § 14—**

   The Federal decisions do not preclude the recovery of punitive dam-
   ages by an employer in its action for false and malicious libel by a labor
   union, in connection with the union's efforts to organize plaintiff's em-
   ployees, when the plaintiff establishes that it has suffered some compen-
   sable harm as a result of the libel.

APPEAL by defendant from *Jackson, J.,* at the 20 June 1966
Schedule "B" Civil Session of MECKLENBURG, docketed and argued
as No. 291 at the Fall Term 1966.

The defendant appeals from an order of the superior court sus-
taining the plaintiff's demurrers to the defendant's second and fourth
further answers, and its motion to strike certain allegations from
the defendant's first and fifth further answers.

The complaint alleges that the defendant caused to be written
and published certain false and defamatory statements with respect

to the plaintiff and thereby "intentionally, wilfully and maliciously" libeled the plaintiff and injured its good name and reputation and the relations between it and its employees, for which the plaintiff prays the recovery of $100,000 actual damages and $100,000 punitive damages. The alleged false statements are these:

(1)   The plaintiff has lied to its employees;

(2)   After one Millard Smith was discharged from its employment, a representative of the management of the plaintiff went to the subsequent employer of Smith and attempted to get Smith discharged from that employment;

(3)   For such purpose the representative of the plaintiff presented to Smith's subsequent employer the work record and progression chart of Smith as employee of the plaintiff;

(4)   The plaintiff's representative "would not only deny Millard Smith a chance to make a decent living for himself, but he has absolutely no feeling for Millard Smith's wife and four children";

(5)   The plaintiff's representative could not "stand the thought of one of his former slaves having a job where he is now making" a higher salary than he formerly made with the plaintiff;

(6)   Such conduct by the representative of the plaintiff's management is a "dirty trick";

(7)   "There is no level to which" such representative of the plaintiff's management "will not sink";

(8)   Unless the employees of the plaintiff embrace the defendant, they "will always have to live in fear of people like" the representative of the plaintiff's management "doing the same thing" to them and to their "wives and children."

The defendant in its answer denies every material allegation of the complaint, including the allegation that it wrote and published the above statements, the allegation of wilfulness and malice and the allegation of damages. There was no motion, demurrer or order with reference to this portion of the answer.

The defendant also alleged five further answers and defenses, the allegations of which and the motions, demurrers and rulings with reference to which are as follows:

I.   *First Further Answer and Defense.*

A.   *Allegations:*

"1.   The defendant is a labor union, formed for the purpose of providing mutual aid and protection to employees. At the time of the events complained of in the complaint, the defend-

ant was engaged in a campaign to organize the employees of the plaintiff.

"2. The communications referred to in the complaint were privileged communications, made in pursuance of the common interest of the defendant and plaintiff's employees, and were pertinent to their common interests.

"3. The statements contained in the communications referred to in the complaint were not defamatory of plaintiff.

"4. To the extent said statements constituted statements of opinion, they were legitimate statements of opinion.

"5. To the extent said statements constituted statements of fact, they were true.

"6. The defendant, acting without malice, ill will, or other improper motive, disseminated only such information as, on the basis of reliable information it had received, it reasonably believed to be true. The defendant is informed and believes and upon such information and belief alleges that all matters disseminated by it in the course of the organizing campaign herein referred to were, in fact, true and the same were published and distributed by the defendant in good faith that all facts therein contained were true, and the defendant pleads the truth as a defense to the plaintiff's complaint, and in mitigation of damages."

B.  *Motion and Ruling.*

The plaintiff's motion to strike paragraphs 2, 3 and 4 of this further answer and defense was allowed.

II.  *Second Further Answer and Defense.*

A.  *The Allegations:*

"The plaintiff conducted the operation of its business activities, and suffered no actual losses attributable to any efforts or conduct on the part of the defendant alleged in the complaint."

B.  *Demurrer and Ruling:*

The plaintiff demurred to this further answer and defense on the ground that it does not allege a bar to the plaintiff's cause of action. The demurrer was sustained and this further answer was struck.

III.  *Third Further Answer and Defense.*

A.  *The Allegations:*

"1. The plaintiff is engaged in interstate commerce and has its principal place of business located in the State of North Carolina. It annually buys substantial amounts of materials

from and ships substantial amounts of materials to, points outside the State of North Carolina.

"2. At the time to which the complaint refers, defendant was engaged in a campaign to organize plaintiff's employees into the Union. Said campaign was conducted subject to, and pursuant to, the National Labor Relations Act. At the time to which the complaint refers, defendant was prepared to file (or had filed) a representation petition with the National Labor Relations Board.

"3. The communications referred to in the complaint are, as a matter of federal law, not actionable. They were true, or were made in the reasonable belief that they were true, and were made with reckless disregard for their truth or falsity. Plaintiff did not suffer actual, compensable harm."

B.   *Motions and Rulings:*

There was no motion, demurrer or ruling with reference to this further answer and defense.

IV.   *Fourth Further Answer and Defense.*

A.   *The Allegations:*

"1. Defendant did not actually participate in, actually authorize, or ratify the distribution of any defamatory materials, and cannot be held liable, as a matter of federal law. 29 U.S.C. Section 106."

B.   *Demurrer and Ruling:*

The plaintiff demurred to this further answer and defense for the reason that Chapter 29, § 106, of the United States Code has no application to civil litigation in state courts and the defendant is liable for the acts of its servants and agents within the course and scope of their employment. This demurrer was sustained, and this further answer was struck.

V.   *Fifth Further Answer and Defense.*

A.   *The Allegations:*

"1. The plaintiff is engaged in interstate commerce and has its principal place of business located in the State of North Carolina. It annually buys substantial amounts of materials from and ships substantial amounts of materials and products to, points outside of the State of North Carolina.

"2. This libel or slander action is brought for alleged conduct arising in the course of an organizing campaign by defendant union among plaintiff's employees. The rights and duties of defendant generally during and with respect to such cam-

paign, and in particular with respect to literature used and statements made in the course thereof as alleged in the Complaint, are preemptively governed by the provisions of the National Labor Relations Act as amended (herein called "Act"). Jurisdiction to adjudicate claims based upon such alleged conduct and action lies exclusively with the National Labor Relations Board to be exercised according to its administrative procedures.

"3. At the time to which the Complaint refers, defendant was prepared to file (or had filed) a representation petition with the National Labor Relations Board, and that body had exclusive jurisdiction thereof and of the penalties to be imposed and the relief to be granted for, actions as alleged in the Complaint and occurring during the campaign for representative rights.

"4. The use of pamphlets, circulars and statements as are described in the Complaint is protected by the Act and by the First and Fourteenth Amendments to the Constitution of the United States, and such use cannot be limited or impaired by the judgment of this Court or by other exercise of this Court's jurisdiction.

"5. The right critically to discuss officials and conduct of an employer in the course of such a campaign is governed preemptively by the Act and is protected by said Act and by the First and Fourteenth Amendments.

"6. Federal law does not permit and prohibits recovery of punitive damages in actions such as this in which only non-violent acts are alleged to have been committed by a labor union.

"7. Plaintiff's remedy, if any, for the matters and things complained of is exclusively within the preemptive administrative jurisdiction of the National Labor Relations Board and this Court is without jurisdiction of the subject matter of the Complaint.

"8. This Court is without jurisdiction to award damages for this alleged cause of action."

B. *Motion, Demurrer and Ruling:*

The plaintiff demurred to this further answer and defense and also moved to strike therefrom paragraphs 2 through 8. The court overruled the demurrer but sustained the motion to strike, except with reference to the first sentence in paragraph 2, thus leaving in the answer the first paragraph and the first sentence of the second.

*Cooper, Mitch, Johnston & Crawford and James B. Ledford for defendant appellant.*

*Grier, Parker, Poe & Thompson by Joe W. Grier, Jr., and Gaston H. Gage for plaintiff appellee.*

LAKE, J. This action was instituted 29 May 1963. Thereupon, the defendant filed a petition for its removal to the United States District Court upon the ground of diversity of citizenship and also upon the ground that the subject matter of the action arises under the laws of the United States. The plaintiff moved to remand. The District Court denied the motion. The Court of Appeals reversed, saying, "Having found no diversity, we also think that no federal question jurisdiction exists." *R. H. Bouligny, Inc., v. United Steel Workers of America,* 336 F. 2d 160. On *certiorari,* the Supreme Court of the United States affirmed, and the action was remanded to the Superior Court of Mecklenburg County. Thereupon, the defendant filed its answer, the plaintiff filed its motions and demurrers and the superior court entered the order which gives rise to the questions now before us, four years having thus been consumed without any determination as to whether the alleged statements were made or, if so, were true or false, malicious or in good faith, or whether the plaintiff was damaged thereby.

For the purpose of determining the validity of the order from which this appeal is taken, we assume that the allegations of fact in the complaint, as distinguished from conclusions of law, are true. We also assume that the affirmative allegations of fact in the several further answers, as distinguished from conclusions of law and from denials of facts alleged in the complaint, are true. *Trust Co. v. Currin,* 244 N.C. 102, 92 S.E. 2d 658. The questions for us are whether, on these assumptions, the allegations struck from the further answers constitute, or are germane to, a valid and sufficient defense to the cause of action, if any, alleged in the complaint. In search of the solution to those questions, we turn first to the law of this State and then to the Constitution and laws of the United States to ascertain what, if any, effect they have upon the law of North Carolina otherwise applicable.

An unincorporated labor union may be sued in the courts of this State as a legal entity separate and apart from its members. G.S. 1-69.1; G.S. 1-97(6); *Gainey v. Brotherhood,* 252 N.C. 256, 113 S.E. 2d 594; *Martin v. Brotherhood,* 248 N.C. 409, 103 S.E. 2d 462; *Construction Co. v. Electrical Workers Union,* 246 N.C. 481, 98 S.E. 2d 852; *Stafford v. Wood,* 234 N.C. 622, 68 S.E. 2d 268. As such,

it may be held liable in damages for torts committed by its employees or agents acting in the course of their employment. See *Transportation Co. v. Brotherhood*, 257 N.C. 18, 31, 125 S.E. 2d 277, *cert. den.*, 371 U.S. 862, 83 S. Ct. 120.

The right of a private business corporation to sue for damages for slander or libel does not appear to have been determined by this Court. It has, however, been considered in other jurisdictions and the right of the corporation to sue appears well settled. 33 Am. Jur., Libel and Slander, § 193; 53 C.J.S., Libel and Slander, § 146; Annot. 86 A.L.R. 442; Annot. 52 A.L.R. 1199; Restatement of the Law, Torts, § 561. Obviously, a corporation may not suffer mental anguish or an injury to personal reputation. It may, however, be injured in its credit, in its business good will, or in its relations with its employees. When so injured, its corporate nature is not a bar to its recovery of damages from the wrongdoer.

The complaint alleges that the statements alleged to have been published by the defendant "injured the good name and reputation" of the plaintiff, and "injured the relations between the plaintiff and its employees" in the total amount of $100,000. At the trial of the action, the plaintiff will have the burden of proving both the nature and the extent of its injuries. For the purposes of this appeal, it is sufficient to note that it has alleged injuries which a corporation is capable of sustaining.

The complaint alleges the defendant published statements asserting that "the plaintiff's representative" did certain things. Of course, a corporation may not maintain an action for damages for libel or slander of its stockholders, officers, employees or representatives. 53 C.J.S., Libel and Slander, § 146; Annot., 52 A.L.R. 1199. However, the fair interpretation of the complaint is that the statements alleged to have been published by the defendant were such, in words and context, that the reader would impute to the plaintiff the alleged conduct of its representative, and thus the plaintiff's own reputation and relations with its employees were damaged. The burden will rest upon the plaintiff at the trial of the action to prove that it, as distinguished from its representative, was libeled by the publications of which it complains.

In *Kindley v. Privette*, 241 N.C. 140, 84 S.E. 2d 660, Bobbitt, J., speaking for the Court, said:

> " 'The publication of any libel is actionable *per se*, that is irrespective of whether any special harm has been caused to the plaintiff's reputation or otherwise. Such a publication is itself an injury * * * and therefore a sufficient ground for recov-

ery of at least nominal damages.' Restatement of the Law, Torts, sec. 569.

\*        \*        \*

"The phrase 'libelous *per se*,' used extensively, has been criticized as inexact. \* \* \* While this phrase appears in our decisions, the words are used in the sense of actionable *per se. Flake v. Greensboro News Co.*, 212 N.C. 780, 195 S.E. 55."

In *Flake v. News Co., supra,* Barnhill, J., later C.J., speaking for the Court, said:

"Libels may be divided into three classes: (1) Publications which are obviously defamatory and which are termed libels *per se;* (2) publications which are susceptible of two reasonable interpretations, one of which is defamatory and the other is not, and (3) publications which are not obviously defamatory, but which become so when considered in connection with innuendo, colloquium and explanatory circumstances. This type of libel is termed libel *per quod.*

"When an unauthorized publication is libelous *per se,* malice and damage are presumed from the fact of publication and no proof is required as to any resulting injury. The law presumes that general damages actually, proximately and necessarily result from an unauthorized publication which is libelous *per se* and they are not required to be proved by evidence since they arise by inference of law, and are allowed *whenever the immediate tendency of the publication is to impair plaintiff's reputation,* although no actual pecuniary loss has in fact resulted." [Emphasis supplied.]

It is to be remembered that the above cases dealt with libel of an individual. A false statement concerning a corporation, which is, by its very nature, incapable of mental suffering or loss of social relationships, is not actionable unless "the immediate tendency of the publication is to impair plaintiff's reputation" in its business relationships, or actual pecuniary loss is alleged and proved. Here, the natural and immediate tendency of the alleged statements, if in fact made, would be to cause actual damage to the relationship between the plaintiff and its employees, an important asset of any business corporation. Thus, nothing else appearing, the statements, if in fact published and false, would be actionable *per se.*

In *Jones v. Hester,* 262 N.C. 487, 137 S.E. 2d 846, the jury found that the defendant had published the libelous statement in question and had done so with actual malice. It awarded $1.00 in actual damages and $1.00 in punitive damages. In sustaining the denial of a

motion to set aside the verdict on the issues as to actual and punitive damages, this Court said:

> "The verdict on Issue No. 1 [publication of the libel] entitled the plaintiff to nominal damages. Any further compensatory damages (other than nominal) could be awarded only upon the basis of proof, by the greater weight of the evidence. The answer to Issue No. 2 [malice] permitted the jury to award punitive damages in its discretion, not as a matter of right, but as punishment for intentional wrongdoing."

Thus, even though the alleged statements were published by the defendant, were not privileged, were false and had a natural and immediate tendency to impair the plaintiff's reputation in the areas of its customer or employee relations, the plaintiff can recover, under the law of this State, as compensatory damages, only a nominal amount in absence of proof of both the fact and the extent of damages actually suffered by it as the result of the publications. It can recover punitive damages only if it proves that the publications were made with actual malice, *Roth v. News Co.*, 217 N.C. 13, 6 S.E. 2d 882, and, even in that event, the amount awarded may not be excessively disproportionate to the circumstances. *Cotton v. Fisheries Co.*, 181 N.C. 151, 106 S.E. 487.

A libelous statement, otherwise actionable, may be not so for the reason that the circumstances under which the statement was published confer upon the publisher a privilege to publish it. "The great underlying principle of the doctrine of privileged communications rests in public policy." *Alexander v. Vann*, 180 N.C. 187, 104 S.E. 360. The basis of privilege is the public interest in the free expression and communication of ideas. Where this interest is sufficient to outweigh the interest of the state in protecting the individual or corporate plaintiff from damage to his or its reputation, social or business relationships, the law does not allow recovery of damages, actual or punitive, occasioned by the defamatory speech or publication.

The leading case in this jurisdiction upon the subject of privileged communications in the law of libel and slander is *Ramsey v. Cheek*, 109 N.C. 270, 13 S.E. 775, quoted with approval in *Ponder v. Cobb*, 257 N.C. 281, 126 S.E. 2d 67. In the *Ramsey* case, Clark, J., later C.J., speaking for the Court, said:

"Privileged communications are of two kinds:

> "1. *Absolutely Privileged* — Which are restricted to cases in which it is so much to the public interest that the defendant should speak out his mind fully and freely, that all actions

in respect to the words used are absolutely forbidden, even though it be alleged that they were used falsely, knowingly, and with express malice. This complete immunity obtains only *where the public service or the due administration of justice requires it, e.g.,* words used in debate in Congress and the State Legislatures, reports of military or other officers to their superiors in the line of their duty, everything said by a judge on the bench, by a witness in the box, and the like. [Emphasis added.] In these cases the action is absolutely barred. [Authorities omitted.]

"2. *Qualified Privilege* — In less important matters where the public interest does not require such absolute immunity, the plaintiff will recover in spite of the privilege, if he can prove that the words were not used *bona fide,* but that the defendant used the privileged occasion artfully and knowingly to falsely defame the plaintiff. [Authorities omitted.] In this class of cases, an action will lie only where the party is guilty of falsehood and express malice. [Authorities omitted.] Express malice is malice in fact, as distinguished from implied malice, which is raised as a matter of law by the use of words libelous *per se,* when the occasion is not privileged. Whether the occasion is privileged is a question of law for the court, subject to review, and not for the jury, unless the circumstances of the publication are in dispute, when it is a mixed question of law and fact."

Both as to absolute privilege and as to qualified privilege, the protection from liability to suit attaches by reason of the setting in which the defamatory statement is spoken or published. The privilege belongs to the occasion. It does not follow the speaker or publisher into other surroundings and circumstances. The judge, legislator or administrative official, when speaking or writing apart from and independent of the functions of his office, is liable for slanderous or libelous statements upon the same principles applicable to other individuals.

Likewise, there is nothing inherent in the nature of a labor union which confers upon it a privilege to slander or to libel. Even when the union, through its representatives, speaks or writes in the course of and with reference to an activity in which the union has a legitimate interest, such as a campaign by it to solicit members or to obtain the right to represent the employees of a business establishment in their collective bargaining with their employer, the public interest in free discussion of the issues involved is not sufficient to clothe the union with an absolute privilege, such as is enjoyed by

a member of the Legislature in a debate within the legislative chambers, or a witness or a judge in the trial of a law suit.

However, "[q]ualified privilege extends to all communications made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has some moral or legal duty to perform." *Alexander v. Vann, supra*. Thus, qualified privilege has been extended to a statement made in good faith by the chairman of a political party charging misconduct of election officials, the statement being made to public officials from or through whom redress might be expected, even though the statement is also made public in a press release. *Ponder v. Cobb, supra*. Qualified privilege has also been extended to statements made in good faith by an investigator, sent by the governing body of a religious organization to inspect the work of its missionaries, the statements being made in his report to the appropriate officials of the denomination. *Herndon v. Melton*, 249 N.C. 217, 105 S.E. 2d 531. Qualified privilege is likewise extended to statements in a newspaper, published in good faith and without malice, concerning alleged waste of public funds, *Yancey v. Gillespie*, 242 N.C. 227, 87 S.E. 2d 210, and to statements made in good faith by the president of a corporation in a notice calling a meeting of its stockholders to consider evidence of misuse of corporate funds. *Jones v. Hester*, 260 N.C. 264, 132 S.E. 2d 586.

We now hold that the defense of qualified privilege extends to statements spoken or published in good faith by a labor union in the course of a campaign to solicit members or to establish itself as the authorized representative of the employees in a business enterprise in their collective bargaining with their employer, provided there is a reasonable relation between such objective and the statement made. The qualified privilege to discuss in good faith the advantages of union membership and conditions of employment which the union might be in a position to improve is not limited to communications between the union and those already members of it, but extends also to communications between the union and prospective members. It is not enough, however, that the statement was made or published at a time and place when and where such campaign was in progress. The statement is not qualifiedly privileged unless there is a reasonable relation between the alleged fact so stated and the objective of the campaign. It cannot be said that the alleged facts so stated in the statements alleged to have been published by the defendant were, upon their face, unrelated to the organizational campaign alleged in the answer so as to render them unprivileged as a matter of law.

Even though the allegedly false statement be of a fact so related to the campaign to achieve a legitimate union objective, the defense of qualified privilege fails if the false statement was made with actual malice. A union has no legal or moral duty or privilege to make a statement, which it knows to be false, concerning an employer's treatment of an employee or former employee, and which it makes for the purpose of creating in other employees hatred, distrust or disloyalty toward the employer. The burden rests upon the employer to prove actual malice in the speaking or publication of the defamatory statement, but, when the jury finds such malice by the greater weight of the evidence, the union is not absolved from liability for the resulting damage to the employer by the fact that its motive was the procurement of additional members or greater authority for the union as spokesman for employees of the establishment. See *Jones v. Hester,* 260 N.C. 264, 132 S.E. 2d 586; *Ponder v. Cobb, supra.*

Mere vituperation and name calling directed by a union against an employer, or vice versa, in the course of a labor dispute or organizational campaign, are not sufficient basis for a recovery of damages for slander or libel. Even where the plaintiff is an individual, some thickness of skin is required of him by the law in the realm of labor disputes, just as in battles in the political arena. Where, however, the false statement goes beyond insulting language and is a positive charge of conduct in specific instances and it is made with knowledge of its falsity or reckless disregard of whether it is true or false, damages may be recovered for resulting injury to the reputation of the employer, or of its products, in the eyes of potential or actual customers, or for injury to the employer's relationship to its employees. These are assets of a business as truly as are its building and machinery. For malicious damage to these assets, the employer may recover in the courts of this State, even though the damage was done by a published statement of a union in the course of a campaign to organize the employer's plant.

Privilege is an affirmative defense. The ultimate facts upon which the defendant claims that it cannot be held liable in damages for its publication of a false statement otherwise actionable must be alleged in the answer. See: *Bryant v. Reedy,* 214 N.C. 748, 200 S.E. 896; *Barringer v. Deal,* 164 N.C. 246, 80 S.E. 161; *Logan v. Hodges,* 146 N.C. 38, 59 S.E. 349.

It is elementary that an act of Congress, in pursuance of the Constitution of the United States, is the supreme law of the land. Constitution of the United States, Article VI, Clause 2. Thus, in case of a conflict between such an act and the law of North Caro-

lina, the act of Congress controls and, so long as it remains in effect, modifies the law of this State and the authority of its courts to render judgment in accordance therewith. It is equally well settled that a decision of the Supreme Court of the United States, construing an act of Congress, is conclusive and binding upon this Court. We, therefore, turn to the National Labor Relations Act, 29 U.S.C. 141, *et seq.*, and the Norris-LaGuardia Act, 29 U.S.C. 101, *et seq.*, relied upon by the defendant, to determine the extent to which, if any, the courts of this State are thereby prevented from applying the law of North Carolina to an action brought against a labor union for damages for libel.

Our attention has been directed to no decision by the Supreme Court of the United States suggesting that the Norris-LaGuardia Act relates to an action in a state court for the recovery of damages for libel. The act plainly relates to the jurisdiction of courts of the United States to issue injunctions and restraining orders in cases involving or growing out of labor disputes. Section 6 of the act, cited by the defendant, states the basis upon which an association or organization participating in or interested in a labor dispute shall be held responsible for acts of its officers, members or agents "in any court of the United States." This act, therefore, does not affect the jurisdiction of the courts of this State over suits for damages for libel and does not prevent them from applying to such actions the law of North Carolina above set forth.

The effect of the National Labor Relations Act upon the jurisdiction of state courts to apply state law to an action against a labor union for the publication of libelous statements during a union organizational campaign was determined by the Supreme Court of the United States in *Linn v. Plant Guard Workers*, 383 U.S. 53, 86 S. Ct. 657, 15 L. Ed. 2d 582. The Court, speaking through Mr. Justice Clark, said:

> "We conclude that where either party to a labor dispute circulates false and defamatory statements during a union organizing campaign, the court does have jurisdiction to apply state remedies if the complainant pleads and proves that the statements were made with malice and injured him."

Mr. Justice Fortas, dissenting, characterized the alleged libel in the *Linn* case as "hardly incendiary," and "pale and anemic" when compared with "the considerably more imaginative use of vituperation" reflected in the complaint now before us, it having been before the Supreme Court of the United States, as above noted, on

the question of the remand to the Superior Court of Mecklenburg County. See 383 U.S. 70, Note 1.

The majority further stated:

"[I]t appears that the exercise of state jurisdiction here would be a 'merely peripheral concern of the Labor Management Relations Act,' provided it is limited to redressing libel issued with knowledge of its falsity, or with reckless disregard of whether it was true or false. Moreover, we believe that 'an overriding state interest' in protecting its residents from malicious libels should be recognized in these circumstances. * * * We similarly conclude that a State's concern with redressing malicious libel is 'so deeply rooted in local feeling and responsibility' that it fits within the exception specifically carved out by Garmon. [San Diego Building Trades Council, etc., v. Garmon, 359 U.S. 236, 79 S. Ct. 773, 3 L. Ed. 2d 775.] * * *

"[I]t must be emphasized that malicious libel enjoys no constitutional protection in any context. After all the labor movement has grown up and must assume ordinary responsibilities. The malicious utterance of defamatory statements in any form cannot be condoned, and unions should adopt procedures calculated to prevent such abuses. * * *

"The malicious publication of libelous statements does not in and of itself constitute an unfair labor practice. * * * The Board [National Labor Relations Board] can award no damages, impose no penalty, or give any other relief to the defamed individual. * * *

"We therefore limit the availability of state remedies for libel to those instances in which the complainant can show that the defamatory statements were circulated with malice and caused him damage. * * *

"As we have pointed out, certain language characteristic of labor disputes may be held actionable per se in some state courts. These categories of libel have developed without specific reference to the labor controversies. However, even in those jurisdictions, the amount of damages which may be recovered depends upon evidence as to the severity of the resulting harm. This is a salutary principle. We therefore hold that a complainant may not recover except upon proof of such harm, which may include general injury to reputation, consequent mental suffering, alienation of associates, specific items of pecuniary loss, or whatever form of harm would be recognized by state torts laws. * * * Likewise, the defamed party must

establish that he has suffered some sort of compensable harm as a prerequisite to the recovery of additional punitive damages."

Thus, it has been determined by the final authority upon the construction of acts of Congress that the National Labor Relations Act does not take from the courts of this State jurisdiction to entertain and to determine, according to the law of this State, actions for damages for libel punished by a union during the course of its campaign to solicit members and become the spokesman for the employees of an industrial plant in their collective bargaining with their employer. It has, however, been so determined that in such an action the courts of this State may not apply the doctrine of libel *per se.* Judgment for the plaintiff in such an action may be rendered only if the plaintiff alleges and proves not only the actual malice sufficient to overcome the qualified privilege allowed the union by the law of this State but also some actual damage resulting from the libelous publication. With this modification, the rules of law applicable to the trial of suits for libel generally in the courts of this State are presently applicable to the trial of such an action against a labor union for libel published by it during the course of a campaign to organize workers in an industrial plant.

There remains for consideration the contention of the defendant that the courts of this State may not award damages against it for the alleged libel because to do so would violate the provisions of the First Amendment to the Constitution of the United States guaranteeing freedom of speech and of the press, which guarantees are now deemed by the Supreme Court of the United States to be incorporated within the protection of the Due Process Clause of the Fourteenth Amendment.

As above stated, the law of North Carolina extends to publications by a labor union, relevant to and in the course of a campaign to organize workers in an industrial plant, the protection of a qualified privilege; that is, no action may be maintained for libel therein in the absence of proof of actual malice. As the majority of the United States Supreme Court said in the *Linn* case, *supra,* "[M]alicious libel enjoys no constitutional protection in any context." In *Thomas v. Collins,* 323 U.S. 516, 65 S. Ct. 315, 89 L. Ed. 430, the Court said, "Of course espousal of the cause of labor is entitled to no higher constitutional protection than espousal of any other lawful cause." In *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686, the Court was concerned with "the use of libel laws to impose sanctions upon expression critical of the official conduct of public officials." Substantially prior to that decision, this Court had declared: "Everyone has a right to comment

on matters of public interest and concern, provided he does so fairly and with an honest purpose. Such comments or criticisms are not libelous, however severe in their terms, unless they are written maliciously." *Yancey v. Gillespie, supra.* The holding in *New York Times Co. v. Sullivan, supra,* was, "The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct *unless* he proves that the statement was made with 'actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not." [Emphasis added.]

We find nothing in the foregoing decisions by the Supreme Court of the United States, or in any other decision of that Court to which the defendant has directed our attention, to indicate that the Fourteenth Amendment grants a more extensive immunity to a labor union writing about an employer than it extends to a newspaper writing about the official conduct of a Commissioner of Police. Consequently, we hold that the First and Fourteenth Amendments to the Constitution of the United States do not deprive the courts of this State of jurisdiction to render a judgment for damages against a labor union in favor of a corporate employer who alleges and proves it suffered actual damages as the result of a libelous statement published by the union "with actual malice — that is, with knowledge that it was false or with reckless disregard of whether it was false or not."

In the light of these principles of the law of this State, as modified by the National Labor Relations Act, we turn to the rulings of the superior court upon the demurrers and motions to strike filed by the plaintiff concerning the further answers of the defendant.

G.S. 1-153 provides, "If irrelevant or redundant matter is inserted in a pleading, it may be stricken out on motion of any person aggrieved thereby * * *." An allegation in a pleading is irrelevant if it has no substantial relation to the controversy between the parties in the particular action. *Council v. Dickerson's, Inc.,* 233 N.C. 472, 64 S.E. 2d 551. "The test of relevancy of allegations sought to be stricken from an answer is whether such allegations, either in themselves or in connection with other averments, tend to state a defense or a counterclaim." *Garrett v. Rose,* 236 N.C. 299, 72 S.E. 2d 843. There is no prejudicial error in striking from a pleading an allegation which merely repeats or restates that which is expressly alleged, or necessarily implied, in other portions of the pleading not stricken. *Pinnix v. Toomey,* 242 N.C. 358, 87 S.E. 2d 893; *Daniel v. Gardner,* 240 N.C. 249, 81 S.E. 2d 660.

Measured by these tests, paragraph 2 of the first further answer

alleges facts which are relevant to the existence of a qualified privilege and also relevant to the applicability to this action of the above stated modification of the law of this State by the National Labor Relations Act. Thus, the striking of this paragraph from the answer was error.

The allegations in paragraphs 3 and 4 of the first further answer that the statements alleged to have been made by the defendant "were not defamatory of plaintiff" and "were legitimate statements of opinion" are not allegations of fact but are conclusions. There was no error in striking them from the answer. *Construction Co. v. Board of Education,* 254 N.C. 311, 118 S.E. 2d 753; *Pinnix v. Toomey, supra.* If by the allegation that the statements were not "defamatory of plaintiff" it was intended to allege that the statements were true, this is merely repetitious of the express allegations in paragraphs 5 and 6 of the first further answer. If the intent was to allege that the statements did not relate to the plaintiff, this allegation is merely repetitious of the denial in the answer in chief. In either event, the striking of this allegation from the answer was in no way prejudicial to the defendant.

The second further answer alleges only that the plaintiff "conducted the operation of its business activities, and suffered no actual losses" by reason of the alleged libelous publications. The *Linn* case, *supra,* does not require proof by the plaintiff of an economic loss in the operation of its business which is capable of accurate measurement in dollars and cents. Proof by the plaintiff of its allegation that the publications "injured the relations between the plaintiff and its employees" or damaged the "good name and reputation" of the plaintiff in the eyes of the employees or prospective employees would be sufficient proof of the element of actual damage, required in the *Linn* case, to permit recovery of nominal damages. Consequently, the second further answer does not allege facts constituting a defense to the cause of action set forth in the complaint and there was no error in sustaining the demurrer to it. The sustaining of this demurrer will in no way prevent the defendant from controverting the allegations of damage contained in the complaint or from offering evidence to disprove them. Those allegations are denied in the answer in chief and are also included within the broader allegation in the third further answer that "plaintiff did not suffer actual, compensable harm." There was no demurrer to or motion to strike any allegation in the answer in chief or in the third further answer. These, therefore, remain in the answer unaffected by the order before us on this appeal, and at the trial of the action the

defendant may introduce evidence, otherwise proper, in support of the allegations therein contained.

There was no error in sustaining the demurrer to the fourth further answer. This merely pleads section 6 of the Norris-LaGuardia Act as a defense to the cause of action set forth in the complaint. This act, as above stated, has no application to an action for damages for libel in the courts of this State.

The allegations stricken from the fifth further answer are not allegations of fact, with the exception of paragraph 3 which, as to the facts alleged, is mere repetition of paragraph 2 of the third further answer. With this exception, the stricken allegations are conclusions and arguments with reference to the jurisdiction of the superior court over the subject matter of this action. The effect of the motion to strike these allegations in the fifth further answer was that of a demurrer to the attack upon the court's jurisdiction to hear and determine the matter on its merits. When these allegations are read in relation to the complaint, it is clear that there was no error in striking these portions of this further answer. Indeed, the allegations allowed to remain in the fifth further answer merely repeat those in the third, which were undisturbed.

As to the contention in paragraph 6 that the federal law does not permit the courts of this State to give judgment for punitive damages in actions such as this, it is sufficient to note that the Supreme Court of the United States said in the *Linn* case, *supra*, "[T]he defamed party must establish that he has suffered some sort of compensable harm *as a prerequisite to the recovery of additional punitive damages.*" [Emphasis added.]

The order of the superior court is, therefore, modified by reversing the allowance of the motion to strike paragraph 2 of the first further answer and defense. Except as so modified, the order is affirmed and the action is remanded to the Superior Court of Mecklenburg County for further proceedings in accordance with this opinion.

Modified and affirmed.