JASON FISHER, BYRON ADAMS, B.C. BARNES, CHERYL BARTLETT, KATHY BEAM, CAROLYN BOGGS, SUSETTE BRYANT, DANNY CASE, GENE DRY, RICKY GRIFFIN, WENDY HERNDON, EVERETT JENKINS, SANDRA LANGSTON, CYNTHIA STAFFORD, MARY TAUTIN, AND TIMOTHY THOMAS, PLAINTIFFS v. COMMUNICATION WORKERS OF AMERICA, COMMUNICATION WORKERS OF AMERICA, DISTRICT 3 AND COMMUNICATION WORKERS OF AMERICA LOCAL 3602, DEFENDANTS

No. COA10-927

(Filed 16 August 2011)

1. Conflict of Laws—withdrawn union memberships—names and social security numbers posted—federal preemption

Plaintiffs' claims under the North Carolina Identity Theft Protection Act and for unfair and deceptive trade practices were preempted by the National Labor Relations Act where employees of defendants generated and distributed lists of members who had dropped their union membership with their social security

numbers. Names alone would have been sufficient to inform union members about their fellow employees' nonmember status and the inclusion of social security numbers could have been viewed by plaintiffs as a punishment and as a restraint on others exercising their labor rights.

**2.Conflict of Laws—withdrawn union memberships—personal information posted—subject of federal claim**

The preemption of state claims by the National Labor Relations Act, as set out in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, places the focus on evaluation of defendant's evidence rather than whether the National Labor Relations Board (NLRB) actually took action on the claims. In this case, the same conduct was the basis for the NLRB and state claims and the *Garmon* preemption was proper.

**3. Conflict of Laws—preemption of state claims—peripheral conduct—exception not applicable**

The exception to preemption of state claims by federal labor law for conduct peripheral to National Labor Relations Board (NLRB) policy did not apply to a case in which social security numbers were posted on a bulletin board along with the names of those withdrawing from a union. Plaintiffs did not allege that actual damages resulted from the posting, which only lasted for an hour, and the NLRB showed concern for the alleged conduct in the form of an approved settlement agreement.

**4. Conflict of Laws—preemption of state claims—significant local interest—exception not applicable**

The exception to preemption of state claims by federal labor law for claims of significant local interest did not apply to a case in which social security numbers were posted on a bulletin board along with the names of those withdrawing from a union. The cases cited by plaintiffs were not applicable and the same controversy was alleged and resolved in NLRB claims, so that there was a danger that a state claim would interfere with the NLRB's interest in adjudicating the controversy.

Appeal by plaintiffs from order entered on or about 7 May 2010 by Judge Albert Diaz in Special Superior Court for Complex Business Cases, Gaston County. Heard in the Court of Appeals 14 December 2010.

*National Right To Work Legal Defense Foundation, by Matthew C. Muggeridge and Stephen J. Dunn, for plaintiffs-appellants.*

*Patterson Harkavy LLP, by Ann E. Groninger and Quinn, Walls, Weaver & Davies LLP, by Robert M. Weaver, for defendants-appellees.*

STROUD, Judge.

Jason Fisher, Byron Adams, B.C. Barnes, Cheryl Bartlett, Kathy Beam, Susette Bryant, Gene Dry, Ricky Griffin, Wendy Herndon, Everett Jenkins, Sandra Langston, Cynthia Stafford, Mary Tautin, and Timothy Thomas (collectively referred to herein as "plaintiffs") appeal from the business court's order granting summary judgment in favor of Communication Workers of America ("CWA"), Communication Workers of America, District 3 ("CWA District 3"), and Communication Workers of America Local 3602 ("CWA Local 3602") (collectively referred to herein as "defendants"). As plaintiffs' claims are preempted by the National Labor Relations Act, we affirm the business court's order dismissing plaintiffs' complaint.

## I. Background

On 11 June 2008, plaintiffs filed a complaint against defendants setting forth the following claims: (1) a violation of the Identity Theft Protection Act; (2) unfair and deceptive trade practices; and (3) invasion of privacy. The complaint requested that defendants be enjoined "from engaging in future violations of the Identity Theft Protection Act;" that judgment be entered against defendants "jointly and severally, in an amount exceeding $10,000;" and for treble damages, reasonable attorneys' fees, and punitive damages. This case was designated as a complex business case and, by order from the Chief Justice of the North Carolina Supreme Court, assigned to the business court on 12 June 2008. Plaintiffs filed an amended complaint on 14 July 2008. On 11 August 2008, defendants CWA and CWA District 3 filed a motion to dismiss plaintiffs' complaint pursuant to N.C. Gen. Stat. · § 1A-1, Rule 12(b)(6). Defendant CWA Local 3602 filed a separate motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) on the same date. On 26 September 2008, the business court issued an order "covering scheduling and case management issues and/or trial in this case." On 30 October 2008, the business court issued an "Order & Opinion" denying defendants' motions to dismiss as to plaintiffs' claims for (1) violations of the Identity Theft Protection Act and (2) unfair and deceptive trade practices but granted defendants' motion

to dismiss as to plaintiffs' third claim for invasion of privacy. On 1 December 2008, defendants CWA and CWA District 3 filed their "Answer and Counterclaim of Defendant" denying plaintiffs' claims; raising several affirmative defenses, including "preemption by federal law[;]" and raising a separate counterclaim against plaintiff Daniel Case "for contribution and equitable subrogation of damages." Defendant CWA Local 3602 also filed a separate, but similar "Answer and Counterclaim of Defendant" on the same date, denying plaintiffs' claims, raising several affirmative defenses, and raising a counterclaim against plaintiff Daniel Case "for contribution and equitable subrogation of damages." On 31 December 2008, plaintiff Daniel Case moved to dismiss defendants' counterclaims, which was granted by written order of the business court on 9 March 2009. On 2 April 2009, plaintiffs filed their responses to defendant CWA's request for admissions. On 4 February 2010, defendants CWA and CWA District 3, collectively, and defendant CWA Local 3602, individually, filed motions for summary judgment. Likewise, on 8 February 2010, plaintiffs filed their motion for summary judgment.

The affidavits, depositions, and documents filed with those motions, along with the parties' pleadings, tended to show that on the morning of 9 October 2007, defendant CWA Local 3602 President John Glenn, an employee of Bellsouth Communications (now AT&T Southeast), attended a meeting of North Carolina local union presidents in Greensboro, North Carolina. While at this meeting he received a printed copy of a spreadsheet from defendant CWA District 3 identifying the employees of Bellsouth Communications who had revoked their union dues deduction, effectively ending their membership in the union. Defendant CWA District 3 had received this spreadsheet as an attachment in an email from Judy Brown, membership dues specialist for defendant CWA. The spreadsheet identified the employees by name, national ID number, local union number, pay group, and other information. The national ID number is the employee's social security number. After the meeting in Greensboro, Mr. Glenn arrived back at the Bellsouth work center, located in Burlington, finished his shift and, between 4:30 and 5:00 p.m., posted the spreadsheet on defendant CWA Local 3602's bulletin board inside the Burlington facility. Plaintiff Daniel Case removed the list from the bulletin board around 5:30 or 6:00 p.m. the same day and retained it in his possession. Around 6:30 p.m., Mr. Glenn received a phone call from his supervisor stating that there was a problem with the list on the bulletin board because it contained employees' social security numbers.

Mr. Glenn told his supervisor that he would remove it but his supervisor informed him that he had already instructed the individual who had complained to take it down and "slide it under his door."

On 14 January 2008, plaintiffs filed individual and identical complaints with the National Labor Relations Board ("NLRB") against defendant CWA Local 3602 contending that the posting of the spreadsheet containing plaintiffs' social security numbers "exposed [plaintiffs] . . . and similarly situated employees to risk of 'identity theft[]' " and amounted to a violation of "Section 8(b)(1)(a) of the [National Labor Relations Act] by causing [plaintiffs] . . . to feel coerced in the exercise of their Section 7 rights." The complaint further alleged that defendant CWA Local 3602's "invasion of [plaintiffs'] . . . privacy constituted a breach of the duty of fair representation." In March 2008, defendant CWA Local 3602 posted a "Notice to Employees and Members" stating that "Pursuant to a Settlement Agreement Approved by a Regional Director of the National Labor Relations Board" it agreed not to "post on our bulletin boards a list of non-member employees identified with their social security number from our Local—Communications Workers of America, Local 3602[;]" not to "otherwise publicly disclose the social security numbers of any bargaining unit employee of our Local—Communications Workers of America, Local 3602[;]" and not to "in any like or related manner, restrain or coerce our employees in the exercise of their rights as guaranteed in Section 7 of the Act." Also, as part of the settlement agreement, defendant CWA Local 3602 sent a letter, dated 17 July 2008, to each of employees whose social security numbers had been posted apologizing for its mistake but stating that by its "voluntary settlement agreement" it did "not admit that it ha[d] violated the National Labor Relations Act[.]"

On 7 May 2010, the business court by written order granted defendants' motion for summary judgment and dismissed plaintiffs' claims, as defendants were

> entitled to a judgment as a matter of law because (1) resolution of Plaintiffs' claims would entail regulation of conduct that is arguably protected or prohibited by federal labor law, *see generally San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959) and is therefore preempted, (2) none of the exceptions to *Garmon* preemption relied on by Plaintiffs applies in this case, and (3) this Court therefore lacks subject matter jurisdiction to consider Plaintiffs' claims.

On 1 June 2010, plaintiffs filed written notice of appeal from the business court's 7 May 2010 order.[1]

On appeal, plaintiffs contend that "the [business] court erred in ruling that the National Labor Relations Act ("NLRA") preempted North Carolina's Identity Theft Protection Act [("NCITPA")] where a labor organization posted employees' social security numbers on a publicly accessible bulletin board." Specifically, plaintiffs argue that the business court erred in granting defendants' motions for summary judgment and ruling that federal law preempted plaintiffs' claims as (1) "*Garmon* preemption does not apply" or, in the alternative, (2) "Both *Garmon* exceptions apply" as "[t]he admitted conduct is 'peripheral' to the National Labor Policy" and "the NCITPA touches significant local interests." Defendants counter that plaintiffs' claims are preempted by the National Labor Relations Act, neither of the *Garmon* exceptions apply or, in the alternative, plaintiffs' claims are also preempted by the duty of fair representation.

## II. Standard of Review

The standard of review from a trial court's ruling on a motion for summary judgment is

> whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law. Summary judgment is appropriate when viewed in the light most favorable to the non-movant, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

*Whisnant v. Carolina Farm Credit*, ___ N.C. App. ___, ___, 693 S.E.2d 149, 152 (2010) (citation omitted), *disc. review denied*, ___ N.C. ___, 705 S.E.2d 745 (2011); N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009).

## III. Federal Preemption of plaintiffs' claims

### A. *Garmon* Preemption

**[1]** Plaintiffs first contend that their claims are not preempted by the National Labor Relations Act as (1) the NCITPA does not conflict with the national labor policy; (2) preemption is not triggered by prior

---

1. Carolyn Boggs and Daniel Case, individual plaintiffs in the original and amended complaints, are not parties to this appeal.

NLRB action or inaction; and (3) plaintiffs' unsuccessful NLRB charge is different from its State claim. Defendants counter that plaintiffs originally believed that the posting of their social security numbers amounted to an NLRA violation, as they first filed NLRB claims arguing that this conduct amounted to a violation of NLRA Sections 7 and 8; the NLRB provided a remedy for these alleged violations of the NLRA, the voluntary settlement agreement; and the alleged conduct in plaintiffs' State claims is "arguably prohibited by the NLRA[,]" and thus preempted by federal law.

In *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 3 L. Ed. 2d 775, the United States Supreme Court explained the general principles to consider when determining whether state law claims are preempted by the NLRA:

> When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. Nor has it mattered whether the States have acted through laws of broad general application rather than laws specifically directed towards the governance of industrial relations. Regardless of the mode adopted, to allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes.

*Id.* at 244, 3 L. Ed. 2d at 782-83 (footnote omitted). The Court further stated that "[w]hen an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *Id.* at 245, 3 L. Ed. 2d at 783. The Court further explained that "[t]o require the States to yield to the primary jurisdiction of the National Board does not ensure Board adjudication of the status of a disputed activity[,]" and

> [i]f the Board decides, subject to appropriate federal judicial review, that conduct is protected by § 7, or prohibited by § 8, then the matter is at an end, and the States are ousted of all jurisdiction. Or, the Board may decide that an activity is neither protected nor prohibited, and thereby raise the question whether

such activity may be regulated by the States. However, the Board may also fail to determine the status of the disputed conduct by declining to assert jurisdiction, or by refusal of the General Counsel to file a charge, or by adopting some other disposition which does not define the nature of the activity with unclouded legal significance. . . . It follows that the failure of the Board to define the legal significance under the Act of a particular activity does not give the States the power to act.

*Id.* at 245-46, 3 L. Ed. 2d at 783-84 (footnote omitted). The Court also delineated two exceptions when state law is not preempted by the NLRA: (1) "where the activity regulated was a merely peripheral concern of the Labor Management Relations Act[;]" or (2) "where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." *Id.* at 243-44, 3 L. Ed. 2d at 782.[2]

In subsequent cases, the Court has held that "the '*Garmon* guidelines [are not to be applied] in a literal, mechanical fashion[,]' " *Local 926, Int'l Union of Operating Eng'rs v. Jones*, 460 U.S. 669, 676, 75 L.Ed. 2d 368, 375-76 (1983) (quoting citing *Sears v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 188, 56 L. Ed. 2d 209, 220 (1978)), and "those claiming pre-emption must carry the burden of showing at least an arguable case before the jurisdiction of a state court will be ousted." *International Longshoremen's Asso. v. Davis*, 476 U.S. 380, 396, 90 L. Ed. 2d 389, 404 (1986). The Court further explained that

[t]he precondition for pre-emption, that the conduct be "arguably" protected or prohibited, is not without substance. It is not satisfied by a conclusory assertion of pre-emption . . . . If the word "arguably" is to mean anything, it must mean that the party claiming pre-emption is required to demonstrate that his case is one that the Board could legally decide in his favor. That is, a party asserting pre-emption must advance an interpretation of

---

2. The Court in *Local 926, Int'l Union of Operating Eng'rs*, 460 U.S. at 676, n.8, 75 L. Ed. 2d at 376, n.8, noted another established exception to federal preemption, but this exception is not relevant in this case: "The NLRA has been held to pre-empt state law and state causes of action relating to conduct that is neither protected nor prohibited, where it is determined that Congress intended the conduct to be unregulated and left to the free play of economic forces. *See Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 140, 49 L. Ed. 2d 396 (1976); *Teamsters v. Morton*, 377 U.S. 252, 260, 9 L. Ed. 2d 732 (1964)."

the Act that is not plainly contrary to its language and that has not been "authoritatively rejected" by the courts or the Board. *Marine Engineers v. Interlake S. S. Co.*, 370 U.S. 173, 184, 8 L. Ed. 2d 418, 82 S. Ct. 237 (1962). The party must then put forth enough evidence to enable the court to find that the Board reasonably could uphold a claim based on such an interpretation.

*Id.* at 344-45, 90 L. Ed. 2d at 403. The Court has further noted that NLRA "[p]re-emption . . . is designed to shield the system from conflicting regulation of conduct. It is the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of concern." *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 292, 29 L. Ed. 2d 473, 486 (1971). Accordingly, in addressing plaintiffs' arguments, we "[f]irst . . . determine whether the conduct that the State seeks to regulate or to make the basis of liability is actually or arguably protected or prohibited by the NLRA." *Jones*, 460 U.S. at 676, 75 L. Ed. 2d at 375 (citing *Garmon, supra*, at 245 and *Sears, supra*, at 187-190). Here, there was action from the NLRB, as there was "a settlement agreement approved by a Regional Director of the National Labor Relations Board[,]" but nothing in the settlement agreement or defendant CWA Local 3602's 17 July 2008 letter to the nonunion employees indicates that the Board made a substantive conclusion or determination regarding plaintiffs' NLRB claim. Therefore, we cannot say that "the Board decide[d] . . . that [the alleged] conduct [was] protected by § 7, or prohibited by § 8[,]" and the State is "ousted of all jurisdiction." *See Garmon*, 359 U.S. at 245, 3 L. Ed. 2d at 783. Likewise, there is no indication in the record that the Board made a determination that the alleged conduct by defendants was "neither protected nor prohibited" by the NLRA. *See id.* But, as noted by *Garmon*, it appears that the Board "fail[ed] to determine the status of the disputed conduct by . . . adopting some other disposition which does not define the nature of the activity with unclouded legal significance[,]" *see id.* at 245-46, 3 L. Ed. 2d at 783, specifically the voluntary settlement agreement. Accordingly, we turn to see whether the alleged conduct by defendants was "arguably protected or prohibited by the NLRA[,]" *see Jones*, 460 U.S. at 676, 75 L. Ed. 2d at 375, by determining whether defendants as "the part[ies] claiming pre-emption" made an NLRA argument that the "Board could legally decide in [their] favor." *See Davis*, 476 U.S. at 395, 90 L. Ed. 2d at 403.

Here, defendants contend that plaintiffs' state claims under the North Carolina Identity Theft Protection Act and for unfair and

deceptive trade practices are arguably preempted by the NLRA. Defendant's note that NLRA Section 7, 29 U.S.C. § 157 "protects an individual's right to refrain from union organizing, union membership, and other union activites[,]" and NLRA Section 8(b), 29 U.S.C. § 158(b), "prohibits a union from restraining or coercing employees in the exercise of their Section 7 rights." Defendants contend that the alleged conduct on which plaintiffs based their State claims, posting the social security numbers of those who had withdrawn their membership in the union, could be viewed as a retaliatory action by defendants which would potentially expose those former union members to identity theft and could discourage members from exercising their NLRA rights. Therefore, defendants conclude, the alleged conduct would be arguably prohibited by sections 7 and 8 of the NLRA.

The relevant portions of Section 7 of the NLRA states that

[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, *and shall also have the right to refrain from any or all of such activities* except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a)(3) [29 USCS § 158(a)(3)].

29 U.S.C. § 157 (2009) (emphasis added). Additionally, Section 8 of the NLRA, titled "Unfair labor practices by labor organization[,]" states in pertinent part, the following:

(b)  It shall be an unfair labor practice for a labor organization or its agents—

(1) *to restrain or coerce* (A) employees in the exercise of the rights guaranteed in section [7] of this title[, USCS § 157][.]

29 U.S.C. § 158(b) (2009) (emphasis added). The NLRB has noted that "[i]t is well settled that threats designed to restrain or coerce employees in the exercise of the rights guaranteed by Section 7 of the Act constitute a violation of Section 8(b)(1)(A)." *United Association of Journeymen & Apprentices of the Plumbing & Pipefitting Industry, et al.*, 237 N.L.R.B. 207, 210 (1978). The NLRB has further stated that "Section 7 affords employees the right to resign from union membership at any time, and that this right cannot lawfully be restricted by

the union." *Int'l Bhd. of Teamsters, Local Union 492*, 346 N.L.R.B. 360, 363 (citing *Machinists Local 1414 (Neufeld Porsche-Audi)*, 270 N.L.R.B. 1330, 1336 (1984), *approved in Pattern Makers League v. NLRB*, 473 U.S. 95, 87 L. Ed. 2d 68 (1985)). After reviewing the relevant portions of the above quoted law, we cannot say that defendants' argument is "plainly contrary to [the] language" of the NLRA or has "been 'authoritatively rejected' by the courts or the Board." *See Davis*, 476 U.S. at 395, 90 L. Ed. 2d at 403. We also note that this is exactly the legal basis which the plaintiffs themselves asserted in their complaints filed with the NLRB against defendant CWA Local 3602. Accordingly, we turn to see if defendants "put forth enough evidence to enable the court to find that the Board reasonably could uphold a claim" supporting defendants' argument that the alleged conduct was preempted by the NLRA. *See id.*

The record shows that employees of defendants CWA and CWA District 3 generated and distributed spreadsheet lists of those nonunion members who had dropped their union membership in 2007 to CWA Local 3602. Those employees of defendants CWA and CWA District 3 were aware that the national ID on the spreadsheet was the non-members' social security number. On 7 October 2007, defendant CWA Local 3602 president John Glenn received from CWA District 3 and posted a spreadsheet containing the names and social security numbers of plaintiffs and others that had withdrawn their union membership in 2007. Defendant CWA District 3 vice-president, Noah Savant, stated in his deposition that CWA encouraged the local unions to organize the nonmembers and the information in the spreadsheet could be used by members "to contact these [non]members to find out . . . why they withdrew from the union and see if they can get them to rejoin." As plaintiffs' NLRB complaint notes, it is well known that a stolen or misappropriated social security number can result in identity theft causing financial hardship or ruin. The posting of an individual's social security number by any former representative, such as a union, could be viewed by an individual as potentially harmful because of the danger of identity theft; plaintiffs themselves viewed the posting of the numbers in just this manner. As plaintiffs' names alone would be sufficient to inform the union members about their fellow employees' nonmember status, the inclusion of plaintiffs' social security numbers in the spreadsheet that was posted on a union bulletin board could have been viewed by plaintiffs as punishment for exercising their Section 7 rights to withdraw their union membership and act as a restraint on other members considering

exercising their Section 7 right. Therefore, we hold that "the Board reasonably could uphold a claim based on . . . [defendant's] interpretation[,]" *see Davis*, 476 U.S. at 394, 90 L. Ed. 2d at 403, and, accordingly, the conduct alleged is "arguably subject to § 7 or § 8 of the Act[.]" *See Garmon*, 359 U.S. at 245, 3 L. Ed. 2d at 783. Consequently, allowing plaintiffs' state claims to proceed would "involve[] too great a danger of conflict between power asserted by Congress and requirements imposed by state law[,]" *see id.*, at 245-46, 3 L. Ed. 2d at 783-84, and, contrary to plaintiffs' arguments, would violate national labor policy. Thus, plaintiffs' state claims are preempted by the NLRA.

[2] Plaintiffs further contend that *Garmon* preemption is not triggered by a prior NLRB action, as the NLRB's General Counsel did not interview plaintiffs and did not make a determination as to whether defendants' conduct was prohibited by NLRA sections 7 and 8. Plaintiffs also argue that "*Garmon* does not hold that when the NLRB's General Counsel takes or refuses to take action, or imposes a settlement on a case having found no violation, all subsequent state remedy will be preempted." As noted by the above analysis, the "prior NLRB action," the settlement agreement, is relevant in determining whether the Board decided that defendants' "conduct [was] protected by § 7, or prohibited by § 8[,]" whether the Board decided that defendants' conduct was "neither protected nor prohibited," or whether "the Board . . . fail[ed] to determine the status of the disputed conduct . . . by adopting some other disposition which does not define the nature of the activity with unclouded legal significance." *Garmon*, 359 U.S. at 245-46, 3 L. Ed. 2d at 783. Here, the settlement agreement showed that the Board did not make a definite decision regarding whether defendants' conduct was protected or prohibited by the NLRA but "adopt[ed] some other disposition[,]" namely the settlement agreement. *See id.* As a result, the focus of the analysis is to determine whether plaintiffs' claims were "arguably" preempted by the NLRA, as defendants contend, *see id.* at 245, 3 L. Ed. 2d at 783, and specifically, whether defendants "put forth enough evidence to enable the court to find that the Board reasonably could uphold" a NLRA claim based on defendants' argument. *See Davis*, 476 U.S. at 395, 90 L. Ed. 2d at 403. Therefore, contrary to plaintiffs argument, the focus of the analysis in determining whether plaintiffs' claims were preempted is not whether the NLRB actually took action on their claims, but instead concerns the evaluation of the evidence put forward by defendants in support of their argument. Accordingly, plaintiffs' argument is overruled.

Plaintiffs also contend that "*Garmon* preemption is only proper when there is an actual or potential conflict of legal schemes whereby a state seeks to regulate conduct arguably protected or prohibited under the NLRA[,]" and here "the regulated activity is a business's misuse of citizens' personal information. . . . not, as in *Garmon*, a local interpretation of the NLRA." As noted above, "[i]t is the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of concern." *Lockridge*, 403 U.S. at 292, 29 L. Ed. 2d at 473. Plaintiffs also attempt to differentiate their NLRB claim from their state claims by arguing that their state claims are based only on the posting of their social security numbers, without considering that it was defendant CWA Local 3602's president who posted the social security numbers. From the record, it is clear that plaintiffs' NLRB claim was based on defendant CWA Local 3602's posting of their social security numbers and plaintiffs alleged that this conduct was a violation of the NLRA. Similarly, plaintiffs' state claims are against defendant CWA Local 3602, a union, and it is defendant CWA Local 3602's action-posting the social security numbers of nonmembers—that forms the basis for plaintiffs' state claims. Therefore, the same conduct is the basis for both the NLRB and state claims. Accordingly, plaintiffs' arguments are overruled.

B.　*Garmon* Exceptions

Plaintiffs, in the alternative, contend that the two *Garmon* exceptions are applicable. Defendants counter that neither of the *Garmon* exceptions are applicable in this case. As noted above, the Court in *Garmon* delineated two exceptions to the above analysis when state law is not preempted by the NLRA: (1) "where the activity regulated was a merely peripheral concern of the Labor Management Relations Act[;]" or (2) "where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." 359 U.S. at 243-44, 3 L. Ed 2d at 782.

1.　Peripheral to the NLRA Policy

[3] Plaintiffs, citing *Linn v. United Plant Guard Workers of America, Local 114, et al.*, 383 U.S. 53, 15 L. Ed. 2d 582 (1966) and *R.H. Boulingny, Inc. v. United Steelworkers of America, AFL-CIO*, 270 N.C. 160, 154 S.E.2d 344 (1967), argue that "the conduct the state seeks to regulate—custody of sensitive personal information—is clearly of peripheral concern to the NLRA[,]" and the *Garmon* excep-

tion applies. Plaintiffs further contend that "the conduct in question was peripheral to national labor policy, since that policy is not concerned with the unions' handling of sensitive personal information of represented employees." Defendants counter that the holdings in *Linn* and *R.H. Boulingny* were limited to "defamation claims pleading and proving actual malice and damages[.]" The United States Supreme Court has stated that "[i]f an activity were merely a 'peripheral concern' of the Act, state and federal courts presumably may restrain it even if arguably protected." *Sears*, 436 U.S. at 223, n.7, 56 L. Ed. 2d at 242, n.7 (citing *Garmon*, 359 U.S. at 246, 3 L. Ed. 2d at 775).

In *Linn*, the Court applied this exception to the plaintiff-employer's state action against the defendant union for libel, holding that "where either party to a labor dispute circulates false and defamatory statements during a union organizing campaign, the court does have jurisdiction to apply state remedies if the complainant pleads and proves that the statements were made with malice and injured him." 383 U.S. at 55, 15 L. Ed. 2d at 586. The Court noted that "although the Board tolerates intemperate, abusive and inaccurate statements made by the union during attempts to organize employees, it does not interpret the Act as giving either party license to injure the other intentionally by circulating defamatory or insulting material known to be false." *Id.* at 61, 15 L. Ed. 2d at 589. The Court reasoned that

> [t]he malicious publication of libelous statements does not in and of itself constitute an unfair labor practice. While the Board might find that an employer or union violated § 8 by deliberately making false statements, or that the issuance of malicious statements during an organizing campaign had such a profound effect on the election as to require that it be set aside, it looks only to the coercive or misleading nature of the statements rather than their defamatory quality. The injury that the statement might cause to an individual's reputation—whether he be an employer or union official—has no relevance to the Board's function. Cf. *Amalgamated Utility Workers v. Consolidated Edison Co.*, 309 U.S. 261 (1940). The Board can award no damages, impose no penalty, or give any other relief to the defamed individual.

*Id.* at 63, 15 L. Ed. 2d at 590. The Court further noted that "[t]he Board's lack of concern with the 'personal' injury caused by malicious libel, together with its inability to provide redress to the maligned party, vitiates the ordinary arguments for pre-emption." *Id.* at 64, 15 L. Ed. 2d at 590. Because of the issue of juries "award[ing]

excessive damages for defamation[,]" and "the stability of labor unions and smaller employers[,]" the Court in "recognition of legitimate state interests does not interfere with effective administration of national labor policy" and limited "the availability of state remedies for libel to those instances in which the complainant can show that the defamatory statements were circulated with malice and caused him damage." *Id.* at 64-65, 15 L. Ed. 2d at 591.

Our Supreme Court in *R.H. Boulingny, Inc.*, addressed the issue of NLRA preemption and summarized the United States Supreme Court's application of the "peripheral concern" exception in *Linn* to the plaintiff-business's state defamation claim against the defendant-union. 270 N.C. 160, 154 S.E.2d 344.

[I]t has been determined by the final authority upon the construction of acts of Congress that the National Labor Relations Act does not take from the courts of this State jurisdiction to entertain and to determine, according to the law of this State, actions for damages for libel punished by a union during the course of its campaign to solicit members and become the spokesman for the employees of an industrial plant in their collective bargaining with their employer. It has, however, been so determined that in such an action the courts of this State may not apply the doctrine of libel *per se.* Judgment for the plaintiff in such an action may be rendered only if the plaintiff alleges and proves not only the actual malice sufficient to overcome the qualified privilege allowed the union by the law of this State but also some actual damage resulting from the libelous publication. With this modification, the rules of law applicable to the trial of suits for libel generally in the courts of this State are presently applicable to the trial of such an action against a labor union for libel published by it during the course of a campaign to organize workers in an industrial plant.

*Id.* at 176, 154 S.E.2d at 357-58. We find that *Linn* and *R.H. Boulingny, Inc.* are distinguishable from the case before us. First, the case before us involves plaintiffs' claims for violation of the Identity Theft Protection Act and unfair and deceptive trade practices, not a defamation claim. Even if the potential for identity theft could be considered as similar to defamation, in that it could cause injury to a person's reputation or credit rating, we note that even in the case of defamation, the exception applies "only if the plaintiff alleges and proves not only the actual malice sufficient to overcome the qualified

privilege allowed the union by the law of this State but also some actual damage resulting from the libelous publication." *See R.H. Boulingny, Inc.*, 270 N.C. at 176, 154 S.E.2d at 358. In this case, even if we were to assume that defendants' action in posting the numbers was malicious, plaintiffs have not alleged that any actual damages resulted from the posting. In fact, the list was only posted for less than an hour before it was removed and there is no indication that any plaintiff has actually suffered from identify theft as a result of the posting. Additionally, we cannot say that the Board had a "lack of concern with the 'personal' injury caused by" defendants' action or the Board had an "inability to provide redress to the maligned party," which would "vitiate[] the ordinary arguments for pre-emption." *Linn*, 383 U.S. at 64, 15 L. Ed. 2d at 590. As the settlement agreement shows, the NLRB was concerned with the alleged conduct of defendants and provided a remedy for the parties in the form of an approved settlement agreement. As these cases are distinguishable, we are not persuaded by plaintiffs' arguments.

2. Significant Local Interests

**[4]** Plaintiffs citing *Belknap v. Hale*, 463 U.S. 491, 77 L. Ed. 2d 798 (1983), *General Electric Co. v. Local 182 Int'l Union of Electrical, Radio, and Machine Works, et al.*, 47 N.C. App. 153, 266 S.E.2d 750 (1980), and *Farmer v. United Broth. of Carpenters and Joiners of America, Local 25*, 430 U.S. 290, 51 L. Ed. 2d 338 (1977), argue that "even if the NLRB process had found the posting of the Social Security numbers an NLRA violation, preemption would not have been appropriate because North Carolina has a strong interest in protecting its citizens from the egregious and illegal conduct alleged in the Compliant."

Plaintiffs further contend that "[i]dentity theft is an issue which the state has a strong interest in regulating in order to protect the public welfare[,]" and like the actions in *Farmer, Belknap*, and *General Electric*, which "concerned conduct which could arguably have been prohibited or protected by the NLRA[,]" the conduct here should not be preempted "because of the predominating local interest." Plaintiffs further contend that "the State of North Carolina may regulate certain outrageous conduct, even as it relates to labor unions[,]" and "the Defendants' total disregard for the privacy of citizens' social security number[s]" is an example of such conduct. Defendants' counter that the cases cited by plaintiffs are inapplicable and, therefore, this *Garmon* exception is also inapplicable to the facts before us.

In *Farmer*, the Court applied the "local interest" exception in *Garmon* and held that the plaintiff union members' state claim for intentional infliction of emotional distress against the defendant union were not preempted. 430 U.S. 290, 51 L. Ed. 2d 338. In *Farmer*, the Court stated "that inflexible application of the [*Garmon*] doctrine is to be avoided, especially where the State has a substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme." *Id.* at 302, 51 L. Ed. 2d at 351. The Court noted that the plaintiff-member had "alleged that the defendants had intentionally engaged in 'outrageous conduct, threats, intimidation, and words' which caused [him] to suffer 'grievous mental and emotional distress as well as great physical damage.' " *Id.* at 301, 51 L. Ed. 2d at 351. The Court reasoned that "there is no federal protection for conduct on the part of union officers which is so outrageous that no reasonable man in a civilized society should be expected to endure it[,]" and, therefore, "permitting the exercise of state jurisdiction over such complaints does not result in state regulation of federally protected conduct." *Id.* at 302, 51 L. Ed. 2d at 351 (citation and quotation marks omitted). The Court further noted that "[t]he State . . . has a substantial interest in protecting its citizens from the kind of abuse of which [the plaintiff-member] complained." *Id.* at 302, 51 L. Ed. 2d at 351. The Court then balanced "the discrete concerns of the federal scheme and the state tort law" and the Board's inability to address the conduct the plaintiff-member alleged:

> If the charges in [the plaintiff-member's] complaint were filed with the Board, the focus of any unfair labor practice proceeding would be on whether the statements or conduct on the part of union officials discriminated or threatened discrimination against him in employment referrals for reasons other than failure to pay Union dues. . . . Whether the statements or conduct of the respondents also caused [the plaintiff-member] severe emotional distress and physical injury would play no role in the Board's disposition of the case, and the Board could not award [the plaintiff-member] damages for pain, suffering, or medical expenses. Conversely, the state-court tort action can be adjudicated without resolution of the "merits" of the underlying labor dispute.

*Id.* at 304, 15 L. Ed. 2d at 352-53. The Court then held that the plaintiff-member's claims for intentional infliction of emotional distress were not preempted by the NLRA, noting that "[o]ur decision rests in

part on our understanding that California law permits recovery only for emotional distress sustained as a result of 'outrageous' conduct." *Id.* at 305, 15 L. Ed. 2d at 353.

In *Belknap*, the Court applied the "local interest" exception in *Garmon* and held that the plaintiffs' state misrepresentation and breach of contract claims against the defendant employer were not preempted by the NLRA. 463 U.S. 491, 77 L. Ed. 2d 798. In *Belknap*, the defendant-employer had promised permanent employment to plaintiffs, a group of employees hired to replace striking union employees. *Id.* at 494-95, 77 L. Ed. 2d at 804-05. A NLRB claim was filed and pursuant to a settlement agreement with the union, defendant-employer rehired the striking union employees and laid off the plaintiffs. *Id.* at 446, 77 L. Ed. 2d at 805. In response, the plaintiffs filed a state claim for misrepresentation and breach of contract against the defendant-employer, alleging that it had made assertions about permanent employment that were false and the plaintiffs had relied on those assertions. *Id.* at 496-97, 77 L. Ed. 2d at 805. The plaintiffs' claim was dismissed pursuant to the defendant's motion for summary judgment based on NLRA preemption; the state court of appeals reversed; and the United States Supreme Court granted the defendant's writ of certiorari. *Id.* at 497, 77 L. Ed. 2d at 806. Citing its prior ruling in *Sears*, 436 U.S. 180, 56 L. Ed. 2d 209, the Court noted that

> a critical inquiry in applying the *Garmon* rules, where the conduct at issue in the state litigation is said to be arguably prohibited by the Act and hence within the exclusive jurisdiction of the NLRB, is whether the controversy presented to the state court is identical with that which could be presented to the Board.

*Id.* at 510, 77 L. Ed. 2d at 814. The Court stated that in applying the "local interest" exception

> the State's interest in controlling or remedying the effects of the conduct is balanced against both the interference with the National Labor Relations Board's ability to adjudicate controversies committed to it by the Act, *Farmer v. Carpenters, supra*, at 297; *Sears, Roebuck & Co. v. Carpenters*, 436 U.S., at 200, and the risk that the State will sanction conduct that the Act protects.

*Id.* at 498-99, 77 L. Ed. 2d at 807. In applying this balancing test, the Court noted that any NLRB action in regard to the alleged conduct would be focused on "whether the rights of strikers were being infringed" not "whether [the defendant-employer] made misrepresentations to replacements that were actionable under state law." *Id.* at

510, 77 L. Ed. 2d at 814. Accordingly, the Court stated "that maintaining the misrepresentation action would not interfere with the Board's determination of matters within its jurisdiction and that such an action is of no more than peripheral concern to the Board and the federal law[,]" and the state had "a substantial interest in protecting its citizens from misrepresentations that have caused them grievous harm." *Id.* at 510-11, 77 L. Ed. 2d at 814. The Court concluded that as the plaintiffs' state claims had "no relevance to the [NLRB]'s function" and the NLRB could "award no damages, impose no penalty, or give any other relief" for their state claims, "state interests involved in this case clearly outweigh any possible interference with the Board's function that may result from permitting the action for misrepresentation to proceed." *Id.* at 511, 77 L. Ed. 2d at 815 (citation and quotation marks omitted).

As to the plaintiffs' breach of contract claim, the Court noted that defendants' actions in response to the settlement agreement did "not immunize [the defendant-employer] from responding in damages for its breach of its otherwise enforceable contracts." *Id.* at 512, 77 L. Ed. 2d at 815. Even if there had been no settlement and the Board had ordered reinstatement of the striking union employees, "the suit for damages for breach of contract could still be maintained without in any way prejudicing the jurisdiction of the Board or the interest of the federal law in insuring the replacement of strikers." *Id.* In turn, the Court concluded that "[w]e see no basis for holding that permitting the contract cause of action will conflict with the rights of either the strikers or the employer or would frustrate any policy of the federal labor laws." *Id.* at 512, 77 L. Ed. 2d at 815-16. The Court further concluded that neither of the plaintiffs' state claims were preempted by the NLRA. *Id.* at 512, 77 L. Ed. 2d at 816.

The third case cited by plaintiffs in support of their argument, *General Electric Co. v. Local 182 Int'l Union of Electrical, Radio, and Machine Works, et al.*, 47 N.C. App. 153, 266 S.E.2d 750, involved the determination of whether a state claim for injunctive relief to enjoin defendant union's picketing which was "impeding the flow of traffic," and those involved where alleged to have "engaged in other illegal and violent acts[,]" such as "damaged vehicles entering the plant, thrown rocks and threatened nonunion employees." On appeal from a trial court's permanent injunction against the defendant union, this Court noted that

[t]he State is not preempted by the National Labor Relations Act from exercising its historic powers of maintaining peace and

order within its jurisdiction and protecting its citizens in the free, rightful and safe use of the public roads and highways. The courts of a state cannot regulate orderly and peaceful picketing. But, where picketing results in heavy traffic congestion, damage to property and threats of physical violence as occurred in this case, the State courts have the power to enforce the laws of this State which protect the public welfare and to enjoin acts of violence and civil disobedience.

*Id.* at 157, 266 S.E.2d at 753. The Court then concluded that "The trial court and consequently this Court has jurisdiction in this case of threatened and actual violence where the picketing could not be characterized as peaceful." *Id.*

In addition to the state claims in *Farmer* for intentional infliction of emotional distress and in *Belknap* for misrepresentation and breach of contract, the "local interest" exception has been also applied to prohibit NLRA preemption of a state trespass claim, *Sears*, 436 U.S. 180, 56 L. Ed. 2d 209, and for malicious interference with a lawful occupation, *Automobile Workers v. Russell*, 356 U.S. 634, 2 L. Ed. 2d 1030 (1958). However, plaintiffs here brought claims for a violation of the Identity Theft Protection Act and for unfair and deceptive trade practices. Therefore, the specific reasoning in *Farmer*, which was based on the plaintiffs' allegation of "outrageous conduct" by defendants is not applicable to the facts before us. Also, in balancing the State's interest in controlling or remedying the effects of the conduct against both the interference with the National Labor Relations Board's ability to adjudicate controversies committed to it by the Act and the risk that the State will sanction conduct that the Act protects, as prescribed by *Farmer* and *Belknap*, we agree that the state has an interest in protecting its citizens from identity theft and from unfair and deceptive trade practices as the result of purposeful or negligent dissemination of social security numbers. However, in examining the "critical inquiry" of "whether the controversy presented to the state court is identical with that which could be presented to the Board[,]" *Belknap*, 463 U.S. at 510, 77 L. Ed. 2d at 814, we note that, unlike *Belknap*, plaintiffs presented the same controversy—defendant CWA Local 3602's posting of plaintiffs' social security numbers—in their state claims as they alleged in their NLRB claims. As noted above, the NLRB settlement stated that defendant CWA Local 3602 would not post non-union members social security numbers on its bulletin board, but a state trial court could potentially, based on the same conduct, hold that labor union defendant CWA

Local 3602's actions were not prohibited by state law and that it is free to post social security numbers as part of the union's business in recruiting former members back into the union. Accordingly, there is a danger that a state claim would interfere with the NLRB's ability to adjudicate this controversy. Therefore, the NLRB's interest in adjudicating controversies committed to it by the NLRA outweighs the State's interests. Thus, the "local interest" exception is inapplicable to the facts before us.

Finally, unlike *General Electric Co.*, plaintiffs make no allegations of "acts of violence and civil disobedience" *See id.* at 157, 266 S.E.2d at 753, that would justify the application of that case to the facts before us. Although plaintiffs alleged potential harm from the posting of the list, as noted above, no actual harm occurred. Accordingly, we find that none of the *Garmon* exceptions are applicable in this case. We conclude that the trial court correctly determined that plaintiffs' claims are preempted by the NLRA and affirm the trial court's order granting defendants' motion for summary judgment and dismissing plaintiffs' claims.[3]

AFFIRMED.

Judges BRYANT and BEASLEY concur.

─────────────

3. As we found that plaintiffs' claims were preempted by the NLRA, we need not address defendants' arguments as to the preemption by the duty of fair representation.